COUNTY HIGHWAY COMMISSION OF
RUTHERFORD COUNTY, Appellee, v. ROBERT
SMITH, Appellant. —454 S.W.2d 124.

Middle Section. December 5, 1969.

Certiorari Denied by Supreme Court April 20, 1970.

Avon N. Williams, Jr., Nashville, for appellant.

William T. Sellers, Murfreesboro, for appellee.

TODD, J. This is an eminent domain proceeding wherein the trial court awarded possession to petitioner and respondent-property owner has appealed.

The compensation to be paid respondent has not yet been ascertained or adjudged, hence this appeal relates only to the right of the petitioner to take the property in question.

The original petition for condemnation alleged that respondent was the owner of certain property, described same by metes and bounds, and continued:

### III

*"That under Project No. S-6303-(1) the Department of Highways and Public Works of the State of Tennessee is to construct a highway* from the intersection of the Barfield Road and Murfreesboro-Shelbyville Highway westward to the community of Barfield and southward to the Community of Crescent, and *the County of Rutherford is required to acquire the rights of way for such highway.*

### IV

"That in order to construct said highway, *it is necessary that a part of the above described tract of land* belonging to the defendant *be used as a right of way.* That portion of said land needed as a right of way *is located by survey heretofore made* and staked out and *shown on plans on file in the office of the Department of Highways and Public Works* at Nashville, Tennessee, *and office of the County Judge of Rutherford County, Tennessee,* * * *."* (Emphasis supplied.)

The petition and accompanying notice to the defendant request the appointment of a jury of view to "set off by metes and bounds" the required property.

The answer of respondent reads in part as follows:

"Being without sufficient information the defendant neither admits nor denies the specific allegations in Section III of the petition but demands strict proof thereof if his rights are to be affected thereby.

"The defendant emphatically denies that it is necessary *of* in the public interest for any part of the land belonging to the defendant to be used as a right of way for the Highway mentioned in said petition or for any highway. Being without sufficient information he neither admits nor denies the remaining allegations of Section IV of the petition but demands strict proof thereof if his rights are to be affected thereby.

\* \* \* \* \* \*

"All allegations contained in the petition not hereinbefore admitted or denied specifically denied are here and now denied as fully and effectively as if specifically denied. Defendant avers that the attempted taking of his property by the petitioner is not in the public interest and is not for a public purpose * * *."

The answer further makes the following defenses:

1. That the proposed widening of the road is unnecessary,

2. That it is opposed by the residents of the area,

3. That it will damage and destroy legitimate public interest in the community,

4. That it will tend to destroy the scenic beauty and lessen values of property,

5. That there is a feasible alternative location for the highway,

6. That it is for the sole benefit of a single individual,

7. That the selection of the route was both arbitrary and discriminatory,

8. That the proposed widening has been carried forward without compliance with the Federal-Aid Highway Act of 1956, Sec. 116(c) and the Regulations of the Federal- Aid Highway System,

9. That the proposed taking would deprive respondent of property and liberty without due process of law or just compensation, and

10. That the proposed taking violates the 14th amendment of the U. S. Constitution.

There was no replication to the answer of respondent. The cause was heard orally without a jury, and the trial judge entered the following order:

"This cause of condemnation proceeding came on to be heard on January 23, 1969 and prior dates before the Honorable John D. Templeton, Chancellor, sitting by interchange, upon the petition of condemnation filed herein and answer thereto of defendant *contesting the right of the petitioner to condemn the subject property,* testimony of witnesses in Open Court, upon the argument of the solicitor, and the entire record in this cause, from all of which the Court finds:

1. That all the allegations in the answer of the defendant are not sustained by the proof, but the contrary

is shown and the defense interposed by the defendant must be overruled.

2. The Court further finds that all things required of the petitioner have been accomplished and done, and that the petitioner is entitled to have the land expressly referred to and described in the petition herein condemned for highway purposes as stated in said petition.

By virtue of the power of eminent domain and of the laws of the State of Tennessee for the purpose of constructing public highways as described in the pleadings in this cause, it is

ORDERED, ADJUDGED AND DECREED by the Court that the Department of Highways and Public Works of the State of Tennessee and the County Highway Commission for Rutherford County, Tennessee, be placed in immediate, quiet and full possession of the property being condemned in the above styled cause to such extent as is necessary to permit said Department to carry on its operations in the construction of said highway, and that the defendant in this suit surrender possession of said property accordingly, and if required and upon application of petitioner that Writ of Possession issue to place petitioner and said Department in possession thereof.'' (Emphasis supplied.)

The appellant-respondent has filed nine assignments of error, which reiterate the insistences of the answer numbered 1-10, supra.

 The right of eminent domain, by which the State is authorized to take private property for public use, when the necessities of the country require, is an inherent right of every government. Allen v. Farnsworth, 13 Tenn. 189 (1833). The right is inherent in sovereignty, subject

only to constitutional limitations. Southern Ry. Co. v. City of Memphis, 126 Tenn. 267, 148 S.W. 662 (1912); Art. 1, Sec. 21, Const. of Tenn. The power of eminent domain is independent of the Constitution, but requires legislative action to exercise it. Trustees of New Pulaski Cemetery v. Ballentine, 151 Tenn. 622, 271 S.W. 38 (1925).

The Commissioner of Highways of Tennessee has the power to improve roads adopted or selected for federal or state aid, and counties have the authority to condemn land for this purpose. Sec. 54-510 T.C.A.

The plans and specifications for this highway are exhibited to the record and show on their face approval of the Commissioner of Highways of the State of Tennessee.

In the absence of a strong showing of fraud or oppression the courts do not generally concern themselves with the advisability of the plans which have been made for a public improvement. Gamble v. Paine, 141 Tenn. 548, 213 S.W. 419 (1919). Williamson County v. Franklin and Spring Hill Turnpike Co., 143 Tenn. 628, 228 S.W. 714 (1920). Cheatham County v. Baker, 161 Tenn. 222, 30 S.W.2d 234 (1929); Justus v. McMahan, 189 Tenn. 470, 226 S.W.2d 84 (1949); Harper v. Trenton Housing Authority, 38 Tenn.App. 396, 274 S.W.2d 635 (1953).

■ When the facilities of the courts are employed to exercise or restrain the power of eminent domain, the courts must determine whether the property sought by the public authority is "necessary" for the previously determined "public use," and, if so, how much of the private property is required. To this end, Chapter 14 of Title 23 of Tennessee Code Annotated provides:

"*23-1404. Petition.*—The person seeking to appropriate such land shall file a petition in the circuit court of the county in which the land lies, setting forth, in substance: (1) The parcel of land or rights therein or incident thereto a portion of which is wanted, and the extent wanted (2) the name of the owner of such land or rights, or, if unknown, stating the fact; (3) the object for which the land, etc., is wanted; (4) a prayer that a suitable portion of land or rights may be decreed to the petitioner, and set apart by metes and bounds, or other proper mode. [Code 1858, sec. 1326; Shan., sec. 1845; mod. Code 1932, sec. 3110.]"

\* \* \* \* \* \*

"*23-1413. Investigation by Jury.*—The jury will then proceed to examine the ground, and may hear testimony, but no argument of counsel, and *set apart, by metes and bounds, a sufficient quantity of land for the purposes intended,* and assess the damages occasioned to the owner thereby. (Emphasis supplied)

"In condemning rights of way for telegraph and telephone companies, or riparian rights, the juries shall not be required to lay off the property, privileges, rights, or easements included in the petition, or sought to be condemned, by metes and bounds; and, in such cases, it shall be discretionary with said juries whether they will view the premises or not. [Code 1858, sec. 1337; Acts 1885, ch. 135; Shan., secs. 1856, 1870; mod. Code 1932, secs. 3121, 3136.]" (Emphasis supplied)

\* \* \* \* \* \*

"*23-1416. Confirmation of report.*—If no objection is made to the report, it is confirmed by the court, and

the land decreed to the petitioner, upon payment to the defendants, or to the clerk for their use, of the damages assessed, with costs. [Code 1858, sec. 1340 (deriv Acts 1849—1850, ch. 72, sec. 5) ; Shan., sec. 1859; Code 1932, sec. 3124.] ''

The proceedings provided in the foregoing statutes have not yet taken place. There has therefore been no laying off by metes and bounds by a jury of view as prayed for in the petition. The only issue made and resolved to the present time is whether the plans heretofore made shall be carried out. Exactly what land and/or rights are necessary for carrying out the plans has yet to be determined under the petition and statutes quoted above.

The part played by the county highway commission in planning the subject highway has been minimal. On August 4, 1967, the commission passed a resolution as follows:

''* * * that a road starting at Lum Smotherman's in the 11th Civil District to the 231 Highway approximately 6 miles in length be set up on the Federal Secondary System and be it further resolved that the County Highway Commission does hereby request the State Highway Department to make a survey of this project in the near future.''

On August 28, 1968, the commission authorized payment of certain sums to certain property-owners who had agreed to sell rights of way and instructed the commencement of necessary condemnation actions. No other action by the county highway commission appears in this record. Apparently, the entire work of planning the new highway was left to the State Highway Department.

■ The defenses of respondent numbered 1, 2, 3, 4, 5, are effectively answered by the following quotation from Gamble v. Paine, supra:

"His witnesses controvert the advisability of relocating the road. This question is certainly debatable on the proof. The evidence, indeed, preponderates in favor of the contentions of the road commissioners. At any rate, the case presents no judicial question for review in the courts." 141 Tenn. at 552, 213 S.W. at 420.

■ The defenses of respondent numbered 6 and 7, supra are not sustained by the evidence. There are charges of personal interest on the part of county officials, but no proof beyond ownership of property adjoining the highway and advocacy of public acceptance of the plan. Furthermore, as previously observed, it appears from this record that all planning decisions were made at the state level, where no interest is shown whatsoever.

There is no evidence of discrimination against respondent in the planning of the highway. Property adjoining and across the road is affected in general the same as that of respondent.

The defenses of respondent numbered 8, 9 and 10 have been considered and rejected in Nashville I-40 Steering Committee v. Ellington, (6th Cir. 1967), 387 F.2d 179, certiorari denied, 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968), wherein the U. S. Circuit Court of Appeals sustained the District Judge in refusing an injunction against construction of a highway and said:

"[8, 9] Appellants contend that, regardless of intent, the result of the construction of the proposed highway would be so injurious to the residents and institutions

of the area as to deprive appellants and those whom they represent of due process and equal protection as a matter of law. We do not agree with this contention. In the absence of proof of racial discrimination, we do not consider this matter to be a justiciable issue. The routing of highways is the prerogative of the executive department of government, not the judiciary.

"As said by the Supreme Court in Berman v. Parker, 348 U.S. 26, 35, 75 S.Ct. 98, 99 L.Ed. 27: 'It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area.'

"The District Judge was on sound legal ground in refusing to substitute his judgment for that of highway officials in the selection of a route for a highway. Road Review League, Town of Bedford v. Boyd, supra, 270 F.Supp. 650, 663 (S.D.N.Y.)

\* \* \* \* \* \*

"* * * The minimizing of hardships and adverse economic effects is a problem addressing itself to engineers, not judges. The providing of just compensation to property owners falls within the purview of the laws of eminent domain." 387 F.2d, page 185.

To the same effect is Landowners Consideration Association v. Montana Power Co., 300 F.Supp. 54 (1969) wherein the court said:

"[4] It is claimed that the privileges and immunities of the plaintiffs are being violated. The privileges and immunities clause of the Fourteenth Amendment relates to privileges and immunities of citizens of the United States. It has never been suggested that it is

a privilege or immunity of a citizen of the United States to be free from the exercise of right of eminent domain."

\* \* \* \* \* \*

"\* \* \* The exercise by a state or those acting under it, of rights of eminent domain does not offend due process. \* \* \*" 300 F.Supp., pp. 57, 58.

Respondent insists that there was insufficient compliance with 23 U.S.C. sec. 128(a), which, prior to August 23, 1968, read as follows:

*"Sec. 128. Public hearings*

(a) Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic effects of such a location. Any State highway department which submits plans for an Interstate System project shall certify to the Secretary that it has had public hearings at a convenient location, or has afforded the opportunity for such hearings, for the purpose enabling persons in rural areas through or contiguous to whose property the highway will pass to express any objections they may have to the proposed location of such highway."

An amendment which became effective August 23, 1968 added to the first sentence:

"the social effect of projects, the impact on environment, and their consistency with the goals and objec-

tives of such urban planning as had been promulgated by the community.''

The preceding statute applies where (1) Any federal aid highway by-passes or goes through any city, town or village, and (2) Where an interstate highway passes through a rural area. Respondent's property is located in a rural area, but the highway is not an interstate highway, hence the second condition of the statute does not apply. The highway herein does pass through or around the village of Barfield, but respondent's property is some distance from the village. It is extremely doubtful that a property owner can be heard to complain that a village has been passed through or by-passed where his property is not in the village.

There is evidence that a meeting was held on July 11, 1968, and that other meetings followed. Respondent insists that the scope of discussion and time allowed was inadequate. The trial judge held otherwise. The evidence does not preponderate against his finding, which must be affirmed. Sec. 27-303, T.C.A.

Furthermore, no authority has been cited for refusing the State its sovereign power of eminent domain because it has not complied with a federal statute or regulation limiting the conditions upon which federal funds will be granted to States. Read in context, the statute quoted above recites one of the conditions upon which federal funds are to be granted to states on particular highway projects. If a state does not see fit to comply with this condition, its right to federal funds may be questioned, but its right to proceed within its own borders under its own laws without federal funding is not impaired by the above statute.

The enforcement of sec. 128(a), 23 U.S.C. is not the responsibility of a state court in eminent domain proceedings, but rather that of federal agencies disbursing federal funds and, if necessary, that of the federal courts by injunctive control of such agencies.

Respondent cites Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608 (1965) wherein the Federal Power Commission, a regulatory agency, had issued a license to a privately owned power utility for construction of a dam. The decision of a regulatory agency is readily distinguishable from a decision by the sovereign to build a highway.

Texas East. Trans. Corp. v. Wildlife Preserves, Inc., 48 N.J. 261, 225 A.2d 130 (1966), cited by respondent, involves the exercise of eminent domain by a privately owned utility under a license from the Federal Power Commission under the National Gas Act, and is readily distinguishable on this ground. City of Pittsburgh v. F. P. C., 99 U.S.App.D.C. 113, 237 F.2d 741 (1956), cited by respondent, is not in point because it involves an order of the Federal Power Commission allowing abandonment of a gas line under the Natural Gas Act.

State Highway Commission v. Danielson, 146 Mont. 539, 409 P.2d 443 (1965), cited by respondent, does not comport with the prior holdings of our Tennessee Supreme Court, which forbids judicial invasion of the political prerogative of where and how to build a highway.

Respondent cites Scruggs v. Town of Sweetwater, 29 Tenn.App. 357, 196 S.W.2d 717 (1946) wherein the complainants sought to enjoin a city from widening a street on the ground that one of the abutting property owners

had conspired to contribute funds and solicit influence for the project to enhance the value of his own property. The chancellor dismissed the bill and this Court affirmed. The principles announced in that case require the rejection of the contentions of respondent in the present case.

Respondent is perturbed because a valuable and scenic rock wall is within the portion of his property to be taken. Such an appurtenance is a part of the realty. The reasonable value of said wall, if taken, must be considered in assessing compensation to respondent, hence the wall is no barrier to the taking of the property where it stands.

Other disadvantages asserted by respondent, such as cuts, fills, and destruction of scenic beauty, are proper matters for consideration in assessing compensation for incidental damages to the remainder of his farm.

A thorough consideration of the entire record and the brief of appellant reveals no ground for reversal. The action of the trial judge is affirmed. The cause will be remanded for further proceedings consistent with the statute.

Respondent-appellant is taxed with the costs of this appeal.

Affirmed and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.