**Sterling D. COKE and Elisabeth V. Coke, his wife, et al., Appellants,**

v.

**COMMONWEALTH of Kentucky, DEPART-MENT OF FINANCE, Appellee.**

Court of Appeals of Kentucky.

Oct. 26, 1973.

Rehearing Denied Jan. 4, 1974.

Gerry L. Calvert, Miller, Griffin & Marks, Lexington, for appellants.

Weldon Shouse, Lexington, for appellee.

CULLEN, Commissioner.

In an action by the Commonwealth of Kentucky, Department of Finance, in accordance with a declaration of necessity made by the Commissioner of Parks, to condemn, allegedly for a state park or

shrine, a dwelling and part of the lot on which it sits in Lexington, once occupied by Mary Todd and known as the "Mary Todd Lincoln Home," issues were raised as to the right of condemnation and as to whether the condemned property and surrounding lot should be considered to have such unity of ownership and use with an adjoining parcel as to require that the two parcels be valued as a single unit in the determination of "before" and "after" values. The trial court concluded that the state had the right to condemn and that the "unit" method of determining damages could not be used. The court therefore entered a judgment so declaring, and by appropriate recitations made it final pursuant to CR 54.02. The owners of the condemned property and surrounding lot, and the lessee thereof, who also is the owner of the adjoining parcel, have appealed, claiming that the judgment is erroneous as to all determinations.

We shall consider first the question of unit valuation.

The lot on which the house sits is owned by Sterling D. Coke, his wife and his daughter. The lot is 96 feet by 111 feet and the house, situated flush on the corner, occupies only about one-fourth of the lot area. The house is in a dilapidated condition and for many years has not been occupied as a dwelling. In recent years the property has been used, under a lease, as an adjunct to the business of the Van Deren Hardware Company, Inc., which owns the adjoining parcel on which there is a building housing a hardware business. Frederick B. Kieckhefer, who is married to the Cokes' daughter, is the principal owner of the hardware company.

The lease covering the Todd House lot contains options which could extend it to the year 2,000. The lot is used by the hardware company primarily as a loading area for trucks. On the side of the lot adjoining the hardware building a loading dock is maintained, and the area next to it is used as a driveway and turn-around space for trucks. The house is used for storage.

The appellants maintain that by reason of the unity of *use,* and the close family relationship of the owners of the two properties, the two properties should be valued as a single unit. The trial court held that the Todd House property must be valued alone, the respective damages of the lessors and the lessee to be determined according to the formula prescribed in Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844. For the reasons hereinafter stated, we concur in the trial court's holding.

In an annotation in 95 A.L.R.2d at page 900, supplemented by the later case service, there is a collation of cases on the specific question of the right to claim damages on the theory of unity of use where the owner of land adjoining the tract being subjected to condemnation has the right to use the condemned land under a lease. There is a division of authority, four jurisdictions rejecting application of the unit theory and two accepting it. The most recent case is State v. Heslar, Ind., 274 N.E.2d 261, where the facts were similar to those in the instant case. There the leased property was used by a car dealer as a used-car lot in conjunction with his automobile business situated on adjacent land owned by the dealer. The Indiana court refused to apply the unit theory.

We believe the cases rejecting application of the unit theory in this kind of fact situation represent the sound view, and we agree with the statement of the federal court in United States v. Honolulu Plantation Co., 182 F.2d 172, cert. den. 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602, that to apply the theory would bring forth "limitless claims of inconvenience, business loss and damage to prospects yet unborn." As a matter of fact, we do not see how the market-value approach required by our constitution (see Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844) could be used if the lessee's interest in the

leased tract were to be valued as the basis of the market value of a unit of which the leased tract was only a part, while the lessor's interest were to be valued on the basis of the market value of the leased tract alone.

Application of the unit theory, in a situation where no lease was involved but where a husband and wife owned one tract of farm land and the wife alone owned an adjoining tract, was rejected by this court in City of Williamstown v. Wallace, Ky., 316 S.W.2d 373. We pointed out there that the real claim under the unit theory is for "severance" damages rather than mere difference in market value. It is true that in Commonwealth, Dept. of Highways v. Dennis, Ky., 409 S.W.2d 292, this court used language suggesting that the unit theory might be applied where different members of a family owned separate parcels of land being operated as a single farm. However, in that case ownership of all of the parcels had become vested in one person by the time the condemnation proceedings were begun, so that there was only one person entitled to claim damages, and the only significance of the previous unity of *use* was to indicate that the purchases putting the land in single ownership were made in good faith and not as a device to enhance the damages.

■ It seems to us that the unit theory never could be applied in cases of separate ownership unless there was such a community of ownership as to warrant treating the property as being in single ownership, and making a single payment of damages to the owners as a unit. In the instant case there was no such community of ownership. The Todd House property was being used by the hardware company under a formal lease arrangement. The owners of the Todd House property merely collected the rent on their property and did not purport to be participants in a communal venture.

■ Our conclusion is, therefore, that the trial judge properly refused to apply the unit theory, and was correct in his opinion that proper compensation will result from application of the *Sherrod* formula.

■ We now consider the contention of the appellants that the right to condemn should be denied because the state authorities did not make a good faith effort to acquire the property by purchase. This contention rests mainly on a statement in the trial judge's written opinion that "The Statute does not require bona fide negotiations." In the context of the opinion this statement merely meant that the state was not required to *haggle*. The judge found that there was an offer which the landowners rejected. The evidence showed that efforts to buy the property were made over a substantial period of time, that the state made a legitimate offer, and the landowners flatly rejected it. The evidence further showed that the landowners had stated on several occasions that they would sell the house alone but would never sell the lot on which the house stood. The trial judge found that the owners had "indicated that the property was not for sale in fee." It is our opinion that there was a good faith effort "to agree with the owner * * * on a price," which is what the statute, KRS 56.463(5), requires. For a comparable holding see Usher and Gardner, Inc. v. Mayfield Ind. Bd. of Ed., Ky., 461 S.W.2d 560.

■ The final contention of the landowners is that the right to condemn should be denied because the state in reality is condemning the property for the use of a private, nonprofit organization, the Kentucky Mansion Preservation Foundation, Inc. There was evidence that the foundation had raised funds by solicitations to aid in the acquisition of the property, and had turned the funds over to the state to be used for that purpose. There further was evidence indicating that perhaps the foundation would be utilized to help restore and maintain the property, and that it might be given some management functions. The

evidence did not establish, however, that the *ownership* of the property would not be retained by the state or that the property would not retain its status as a state park or shrine. The fact that the foundation might be given some management functions does not mean that the property will not be devoted to state use, any more than is the case where dock facilities in a public park are leased or a contract is made with a private company to operate a restaurant in a state office building.

The judgment is affirmed.

All concur.