THOMPSON, JUDGE:
The Commonwealth of Kentucky, Transportation Cabinet, Department of Highways (Transportation Cabinet) sought to acquire a portion of property owned by Kuchle Realty Company, LLC, to construct a right turn lane road improvement at the intersection of Dixie Highway and Kyles Lane (the intersection project) in Kenton County. Kuchle filed an objection to the Transportation Cabinet's petition for condemnation on the basis that the Transportation Cabinet failed to comply with federal and state laws and the Transportation Cabinet's policy manual during the condemnation process. The circuit court conducted a hearing and granted the Transportation Cabinet's petition.
As early as 1986, plans were discussed to improve the intersection of Kyles Lane and Dixie Highway. A drawing depicting a *98 turn lane at the intersection was generated by the Northern Kentucky Area Planning Commission (NKAPC) in 1986 and was part of a broader planning study by the OKI Regional Council of Government,[1] referred to as the "Dixie Fix."
In an email submitted as an exhibit at the hearing, Roger Kuchle, an owner of Kuchle, acknowledged he attended planning meetings at OKI in 2007 and knew some of Kuchle's property would be involved in the Dixie Fix, whatever design was chosen.
With the knowledge that a portion of Kuchle's property would be involved in the intersection project, in 2009-2010 Kuchle sought and obtained zoning approval for the construction of a Walgreens store on Kuchle's property. The approval required that Kuchle design the Walgreens store to comport with the intersection project plan.
Walgreens subleased the property for a period of seventy-five years from Anchor Kentucky Partners, LLC, which has a ground lease for the property from Kuchle. Under the terms of the lease, if any property is taken by condemnation, the lease can be terminated at Walgreens' discretion upon sixty days' notice.
In 2009, the design money for the intersection project was allocated and design began. In January 2014, a set of plans was completed and compensation for condemnation of part of Kuchle's property to facilitate the intersection project was calculated. There was evidence that a Transportation Cabinet representative met with Mr. Kuchle on June 2, 2014, and discussed the plans and that the property to be taken had been valued by the Transportation Cabinet at $23,950 using a Minor Acquisition Review (MAR). The Transportation Cabinet offered that amount and Kuchle rejected the Transportation Cabinet's offer.
Upon Kuchle's request, the Transportation Cabinet arranged an appraisal by a certified licensed appraiser, Brian Davis, who appraised the property at $41,500 and the Transportation Cabinet offered that amount. Kuchle did not believe the appraisal was an accurate valuation of the property and rejected the Transportation Cabinet's offer. The Transportation Cabinet's record of contacts indicates that in January 2015, the Transportation Cabinet again offered $41,500 and Kuchle counteroffered $66,900. After fourteen months of negotiations failed, on July 7, 2015, the Transportation Cabinet filed a condemnation petition. Kuchle filed an objection to the petition.
In August 2015, Mr. Kuchle sent a list to the Federal Highway Administration alleging twelve instances where the Transportation Cabinet violated federal law in the condemnation process. However, federal funding for the intersection project was not withdrawn.
Following the hearing, the circuit court found there was no evidence that the Transportation Cabinet acted fraudulently, with bad faith or that it abused its discretion. It also found that the Transportation Cabinet substantially complied with state and federal laws regarding the condemnation of Kuchle's property. This appeal followed.
The Transportation Cabinet sought to condemn Kuchle's property pursuant to the Eminent Domain Act of Kentucky, Kentucky Revised Statutes (KRS) 416.540 et seq. KRS 416.550 provides, in relevant part:
*99 Whenever any condemnor cannot, by agreement with the owner thereof, acquire the property right, privileges or easements needed for any of the uses or purposes for which the condemnor is authorized by law, to exercise its right of eminent domain, the condemnor may condemn such property, property rights, privileges or easements pursuant to the provisions of KRS 416.550 to 416.670.
The authority to condemn is subject to the constitutional restriction that the taking be for "public use" and the condemnee receive "just compensation[.]" See Ky. Const. § 13. "Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken." God's Ctr. Found., Inc. v. Lexington Fayette Urban Cty. Gov't , 125 S.W.3d 295, 299 (Ky. App. 2002). The Courts will not interfere with a decision to condemn unless "there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power." Commonwealth Dep't of Highways v. Vandertoll , 388 S.W.2d 358, 360 (Ky. 1964). "[W]hen the department of highways by official order determines that an acquisition is necessary a condemnee, in order to defeat such an acquisition, has the burden of proving fraud, bad faith, or abuse of discretion." Id. at 359. This Court reviews a lower court's determination under a clearly erroneous standard and will uphold its ruling if supported by substantial evidence. Clark v. Bd. of Regents of W. Ky. Univ. , 311 S.W.3d 726, 731 (Ky. App. 2010). An interlocutory order on the condemnor's right to take is immediately appealable. Ratliff v. Fiscal Court of Caldwell Cty., Kentucky , 617 S.W.2d 36, 39 (Ky. 1981).
Kuchle's arguments concern the procedures followed prior to the filing of the Transportation Cabinet's condemnation petition. It argues that because the intersection project is funded in part with federal funds, the Transportation Cabinet's failure to strictly comply with various federal statutes and regulations requires that the condemnation petition be dismissed. Specifically, Kuchle argues that the Transportation Cabinet must comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 embodied in 42 United States Code (U.S.C.) § 4601, et seq. and regulations contained in the Code of Federal Regulations (C.F.R.) Title 49, Part 24.
The purpose of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970 is "to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices[.]" 42 U.S.C. § 4651. Among its provisions, are the following:
(1) The head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation.
(2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head of the lead agency may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value.
(3) Before the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a *100 prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. Where appropriate the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.
Id.
49 C.F.R. 24.102 was promulgated pursuant to 42 U.S.C. § 4651. It provides in part:
(c) Appraisal, waiver thereof, and invitation to owner.
(1) Before the initiation of negotiations the real property to be acquired shall be appraised, except as provided in § 24.102 (c)(2), and the owner, or the owner's designated representative, shall be given an opportunity to accompany the appraiser during the appraiser's inspection of the property.
(2) An appraisal is not required if:
(i) The owner is donating the property and releases the Agency from its obligation to appraise the property; or
(ii) The Agency determines that an appraisal is unnecessary because the valuation problem is uncomplicated and the anticipated value of the proposed acquisition is estimated at $10,000 or less, based on a review of available data.
(A) When an appraisal is determined to be unnecessary, the Agency shall prepare a waiver valuation.
(B) The person performing the waiver valuation must have sufficient understanding of the local real estate market to be qualified to make the waiver valuation.
(C) The Federal Agency funding the project may approve exceeding the $10,000 threshold, up to a maximum of $25,000, if the Agency acquiring the real property offers the property owner the option of having the Agency appraise the property. If the property owner elects to have the Agency appraise the property, the Agency shall obtain an appraisal and not use procedures described in this paragraph. (See appendix A, § 24.102(c)(2).)
(d) Establishment and offer of just compensation. Before the initiation of negotiations, the Agency shall establish an amount which it believes is just compensation for the real property. The amount shall not be less than the approved appraisal of the fair market value of the property, taking into account the value of allowable damages or benefits to any remaining property. An Agency official must establish the amount believed to be just compensation. (See § 24.104.) Promptly thereafter, the Agency shall make a written offer to the owner to acquire the property for the full amount believed to be just compensation. (See appendix A, § 24.102(d).)
49 C.F.R. 24.102(h) provides the agency shall not take any "coercive action in order *101 to induce an agreement on the price to be paid for the property." Kuchle points out that the Transportation Cabinet's policy manual on property acquisitions for federally funded project states that "[u]nder no circumstance are variations to be allowed that will be less than minimum requirements outlined in 49 CFR, Part 24."
Kuchle also argues the Transportation Cabinet failed to strictly comply with 23 U.S.C. § 134 and 23 U.S.C. § 135, applicable to transportation planning, and the regulations promulgated thereunder. It contends that the Transportation Cabinet did not publish the plan for the intersection project to the public and interested parties and provide the opportunity for interested parties to comment.
While there is no dispute that to receive federal funding for the intersection project the Transportation Cabinet was required to comply with federal laws regarding condemnation of property necessary to facilitate that project, the issue is whether noncompliance requires that the condemnation petition be dismissed. Federal and state courts have held noncompliance with the federal statutes and regulations upon which Kuchle relies do not require dismissal of the Transportation Cabinet's petition.
42 U.S.C. § 4602(a) expressly addresses this precise issue. It states: "The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." In City of Mishawaka v. Sara , 396 N.E.2d 946 (Ind. App. 1979), the Court held that compliance with 42 U.S.C. § 4651 was not a prerequisite to condemnation of property to facilitate a federally-funded urban renewal project. The Court noted that the "intent of Congress in enacting [§] 4602(a).... could not have been expressed more clearly: the policies set forth in [§] 4651 are advisory only, and they create no right in the condemnee to judicial review of an agency's property acquisition practices." Id. at 947 (internal citation and parenthetical information omitted). Federal Courts have likewise held that the policies set forth in § 4651 are advisory only. See United States v. 416.81 Acres of Land , 525 F.2d 450, 454 (7th Cir. 1975) ; Paramount Farms, Inc. v. Morton , 527 F.2d 1301, 1305 (7th Cir. 1975). As the Court emphasized in Paramount Farms, Inc ., the purpose of § 4651"is limited to providing uniform nationwide 'guidelines' in the public taking of lands by the Federal Government." Paramount Farms, Inc., 527 F.2d at 1305.
Nor can Kuchle rely on Title 23, U.S.C. to defeat the Transportation Cabinet's authority to condemn. In Cty. Highway Comm'n of Rutherford Cty. v. Smith , 61 Tenn.App. 292, 454 S.W.2d 124 (1969), the Court addressed whether compliance with 23 U.S.C. § 128(a) was prerequisite to a condemnation petition. 23 U.S.C. § 128(a) requires any state highway department that submits plans for a federal-aid highway project to certify public hearings have been held on the matter or the opportunity for such hearings has been afforded before the state can exercise its power of eminent domain. The Court aptly explained why noncompliance does not defeat the state's power:
[N]o authority has been cited for refusing the State its sovereign power of eminent domain because it has not complied with a federal statute or regulation limiting the conditions upon which federal funds will be granted to States. Read in context, the statute quoted above recites one of the conditions upon which federal funds are to be granted to states on particular highway projects. If a state does not see fit to comply with this condition, its right to federal funds may be questioned, but its right to proceed within its own borders under its own laws without federal funding is not impaired by the above statute.
*102 The enforcement of [the federal statute] is not the responsibility of a state court in eminent domain proceedings, but rather that of federal agencies disbursing federal funds and, if necessary, that of the federal courts by injunctive control of such agencies.
Cty. Highway Comm'n , 61 Tenn.App. at 304-05, 454 S.W.2d at 129.
The language in the federal and state court opinions is persuasive. The statutes and regulations cited are only guidelines and the failure to follow those guidelines does not affect the power of eminent domain under state law. Moreover, we agree with the trial court that the Transportation Cabinet substantially complied with the federal law and its policy manual.
There was evidence that Kuchle was provided notice of the intersection project when, in 2007, Mr. Kuchle attended public meetings at OKI where the intersection project was discussed. Additionally, when Kuchle obtained a zoning approval in 2009-2010 to construct the Walgreens store, it was directed to design the development with consideration of the intersection project. While Kuchle complains that it was unaware of the specific design that eventually was settled upon in 2014, it is impractical for the Transportation Cabinet to inform interested parties of every change in the design to carry out the project plan. Although Kuchle suggests that the Transportation Cabinet was required to ensure that the Kenton County Transportation Plan included the intersection project, there is no such requirement under federal or state law that requires a county plan to contain a state transportation plan before it can be undertaken by the state.
While Kuchle claims there was no appraisal prior to negotiations, that is untrue. The property was valued by the Transportation Cabinet appraiser utilizing a MAR, a simple computation used when the Transportation Cabinet appraiser determines the value will be less than $25,000. In this case, it was determined the value was uncomplicated because there was no damage to the building or remainder. Although Kuchle argues the later appraisal by Davis was invalid because of the method used and the value determined was too low, Kuchle's argument is improper at this stage of the litigation. It will have the opportunity to present evidence to a jury relative to the reliability of Davis's appraisal.
Kuchle also argues that Mr. Kuchle was not given the opportunity to accompany Davis on his visit to the property. However, Davis testified he offered to meet Mr. Kuchle at the site and he declined because of a "do not disturb" clause in the lease.
Contrary to Kuchle's assertion, there is no evidence that the Transportation Cabinet took any coercive action to induce an agreement on the price paid for the property. While in September 2014, the Transportation Cabinet informed Kuchle that if its offer was not accepted it would initiate condemnation proceedings, such a statement is not evidence of coercion or the failure to negotiate in good faith. It is merely an accurate statement of the power of eminent domain. The record reveals that the Transportation Cabinet engaged in extensive good-faith negotiations with Kuchle prior to initiating the proceeding.
In addition to its findings that the Transportation Cabinet complied with federal and state laws, the trial court found Walgreens did not consider the Transportation Cabinet's condemnation to be material to their leasehold interests. The trial court made this finding based on a series of emails between counsel for Walgreens and Anchor Kentucky Partner, LLC, and counsel for Kuchle.
Kuchle complains these emails were not introduced into evidence but contained in *103 the Transportation Cabinet's post hearing brief and were part of confidential settlement negotiations that are inadmissible under Kentucky Rules of Evidence (KRE) 408. Even if Kuchle is correct that the emails were improperly considered by the trial court, whether Walgreens will or will not exercise its option to vacate goes to the ultimate valuation of the property sought to be condemned, not to the Transportation Cabinet's right to take. In this interlocutory appeal, the right to take is the sole issue.
There was more than substantial evidence to support the circuit court's finding that the Transportation Cabinet did not engage in any conduct that would require the dismissal of its condemnation petition.
For the reasons stated, the order of the Kenton Circuit Court is affirmed.
ALL CONCUR.

OKI is a council of local governments and regional groups serving the Ohio, Kentucky and Indiana region around Cincinnati, Ohio.