RENDERED: APRIL 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1280-MR

MARILYN RUMMAGE MUERDTER;
ANTHONY TANNER STIVERS;
DAVID RUMMAGE; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARY F. RUMMAGE; PEGGY A.
RUMMAGE; AND TERRY J.
RUMMAGE                                                    APPELLANTS


APPEAL FROM BULLITT CIRCUIT COURT
v.        HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 19-CI-00752


LOUISVILLE GAS AND ELECTRIC
COMPANY                                                      APPELLEE

AND


NO. 2021-CA-1282-MR

MARILYN RUMMAGE MUERDTER;
ANTHONY TANNER STIVERS;
DAVID RUMMAGE; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARY F. RUMMAGE; PEGGY A.
RUMMAGE; AND TERRY J.
RUMMAGE                                                    APPELLANTS

APPEAL FROM BULLITT CIRCUIT COURT
v.      HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 19-CI-00754


LOUISVILLE GAS AND ELECTRIC
COMPANY                                      APPELLEE

AND


NO. 2021-CA-1283-MR


MARILYN RUMMAGE MUERDTER;
ANTHONY TANNER STIVERS;
DAVID RUMMAGE; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARY F. RUMMAGE; PEGGY A.
RUMMAGE; AND TERRY J.
RUMMAGE                                      APPELLANTS


APPEAL FROM BULLITT CIRCUIT COURT
v.      HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 19-CI-00758


LOUISVILLE GAS AND ELECTRIC
COMPANY                                        APPELLEE

AND


NO. 2021-CA-1286-MR

IOLA CAPITAL, LLC; MARK E.
CARTER; MONICA LYNNE
CARTER; AND PAMELA
QUARTERLY                                                    APPELLANTS


APPEAL FROM BULLITT CIRCUIT COURT
v.      HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 19-CI-00755


LOUISVILLE GAS AND ELECTRIC
COMPANY; ANTHONY TANNER
STIVERS; DAVID RUMMAGE; EAST
KENTUCKY POWER
COOPERATIVE, INC.; ENERGY
TRANSFER PARTNERS, LLC; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARILYN RUMMAGE MUERDTER;
MARY RUMMAGE; PAUL
MITCHELL WHITWORTH; PEGGY
A. RUMMAGE; PNC FINANCIAL
SERVICES GROUP; SALT RIVER
ELECTRIC COOPERATIVE
CORPORATION; TERRY J.
RUMMAGE; AND WEST POINT
BANK                                                           APPELLEES

AND


NO. 2021-CA-1288-MR


IOLA CAPITAL, LLC; MARK E.
CARTER; MONICA LYNNE
CARTER; AND PAMELA
QUARTERLY                                                    APPELLANTS

APPEAL FROM BULLITT CIRCUIT COURT
v.       HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 19-CI-00750


LOUISVILLE GAS AND ELECTRIC
COMPANY; ANTHONY TANNER
STIVERS; DAVID RUMMAGE; EAST
KENTUCKY POWER
COOPERATIVE, INC.; ENERGY
TRANSFER PARTNERS, LLC; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARILYN RUMMAGE MUERDTER;
MARY RUMMAGE; PAUL
MITCHELL WHITWORTH; PEGGY
A. RUMMAGE; PNC FINANCIAL
SERVICES GROUP; SALT RIVER
ELECTRIC COOPERATIVE
CORPORATION; TERRY J.
RUMMAGE; AND WEST POINT
BANK                                                            APPELLEES

    AND


NO. 2021-CA-1289-MR


MARILYN RUMMAGE MUERDTER;
ANTHONY TANNER STIVERS;
DAVID RUMMAGE; JESSIE
STIVERS; KIMBERLY RUMMAGE;
MARY F. RUMMAGE; PEGGY A.
RUMMAGE; AND TERRY J.
RUMMAGE                                                        APPELLANTS

LOUISVILLE GAS AND ELECTRIC
COMPANY                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, LAMBERT, AND McNEILL, JUDGES.

GOODWINE, JUDGE:  Appellants, Marilyn Rummage Muerdter; Anthony

Tanner Stivers; David Rummage; Jessie Stivers; Kimberly Rummage; Mary F.

Rummage; Peggy A. Rummage; and Terry J. Rummage (collectively "the

Rummage family") and Iola Capital, LLC; Mark E. Carter; Monica Lynne Carter;

and Pamela Quarterly (collectively "Iola") appeal from the Bullitt Circuit Court's

interlocutory judgment allowing Appellee, Louisville Gas and Electric Company

("LG&E"), to condemn portions of their property to obtain easements to construct

a natural gas pipeline.  After careful review, finding no error, we affirm.

LG&E is a public utility that provides natural gas service to the people

of the Commonwealth, including Bullitt County.  In May 2018, LG&E began

negotiating the purchase of easements from the Rummage family and Iola for the

construction of a new natural gas pipeline. Negotiations were unsuccessful. On July 30, 2019, LG&E filed complaints against the Rummage family and Iola to condemn their property to obtain easements for its natural gas pipeline project under the Eminent Domain Act of Kentucky (KRS[1] 278.502).

On May 18, 2021, the Bullitt Circuit Court entered a judgment in favor of LG&E ordering the Rummage family and Iola to convey the rights and easements sought to LG&E. The circuit court found LG&E negotiated in good faith, and the pipeline is for public use. Thus, LG&E did not abuse its discretion in condemning the properties for easements.

The Rummage family moved to alter, amend, or vacate and for clarification of factual issues. The Rummage family argued that the circuit court must make additional findings to determine the "primary purpose in seeking condemnation." Record ("R.") at 857 (19-CI-00753). On September 29, 2021, the circuit court entered an order denying the motion. The court found that the Rummage family failed to produce evidence "to counter the fact that the new pipeline is necessary for additional dependable service and capacity" in Bullitt County. R. at 859. The court found LG&E's witnesses credible regarding the proposed pipeline and its public use. The court found that a primary purpose standard was not the law; instead, the utility must show a public purpose.

---

[1] Kentucky Revised Statutes.

The circuit court also denied the Rummage family's motion to alter, amend, or vacate to obtain relief from their failure to respond to LG&E's interrogatories and requests for the production of documents and to introduce new "smoking gun" evidence. The court found none of the materials or arguments tendered address whether the LG&E "is a public utility and has a public use behind the proposed pipeline." R. at 862.

Iola also moved to alter, amend, or vacate and for clarification of factual findings on the same basis as the Rummage family. The circuit court entered an order on September 29, 2021, denying the motion. The court reiterated that the focus of its analysis was on public use. LG&E presented undisputed testimony that the pipeline was for public use. This appeal followed.

Before proceeding with our review, we note two other Kentucky Court of Appeals opinions concerning LG&E's natural gas pipeline project in Bullitt County. First, in *Kentucky Heritage Land Conservation Fund Board v. Louisville Gas and Electric Company*, 648 S.W.3d 76 (Ky. App. 2022), this Court addressed the sole issue of "whether the doctrine of sovereign immunity precludes the Bullitt Circuit Court from proceeding to determine whether LG&E is entitled to exercise the right of eminent domain with respect to property upon which the Commonwealth of Kentucky owns a conservation easement." *Id.* at 78. This Court held:

the plain language of KRS 382.850(2) authorizes a statutory right of eminent domain to prevail over a conservation easement because a conservation easement is assumed not to exist upon the exercise of a statutory right of eminent domain. If it is assumed that the Board's conservation easement does not exist, then there is no prior public use to impede the exercise of LG&E's right of eminent domain.

*Id.* at 89.

Additionally, in *Iola Capital v. Public Service Commission of Kentucky*, 659 S.W.3d 563 (Ky. App. 2022), Iola challenged LG&E's certificate of public convenience and necessity ("CPCN"). This Court affirmed "the Franklin Circuit Court's order dismissing Iola's and Bernheim's claims for redress of the Commission's action in approving the CPCN and not allowing them relief through the complaint process." *Id.* at 579. There, this Court noted the condemnation case, which is currently before us, was the appropriate case to address the eminent domain issues:

We note that denying the appellants' claims for redress in this appeal does not mean that the pipeline will necessarily be constructed through their properties. Instead, the appellants' interests are specifically addressed and preserved by the Eminent Domain Act of Kentucky (KRS 416.540 to 416.670) in the ongoing condemnation proceedings before the Bullitt Circuit Court.

*Id.* at 578.

On appeal, the Rummage family argues: (1) the circuit court erred in failing to determine the primary purpose of the condemnation; (2) LG&E abused its discretion in determining the route of the pipeline and fraudulently concealed information from the public in selecting the proposed route; and (3) LG&E failed to act in good faith. Iola argues that the circuit court erred in refusing to determine whether the asserted public benefit of the pipeline was a pretext, which is substantially similar to the Rummage family's first argument.

"[T]he provisions of KRS 416.610(4) referring to an interlocutory judgment . . . , allows an immediate, expedited appeal, by the condemnee of the question of the condemnor's right to take." *Ratliff v. Fiscal Court of Caldwell Cnty., Kentucky*, 617 S.W.2d 36, 39 (Ky. 1981). "Although the factors of necessity and public use associated with condemnation are ultimately legal issues, resolution of those issues encompasses factual matters subject to deferential review on appeal." *God's Center Foundation, Inc. v. Lexington Fayette Urban Cnty. Government*, 125 S.W.3d 295, 300 (Ky. App. 2002). Thus, "we review the trial court's factual findings under a clearly erroneous standard and the legal issues *de novo.* Factual findings are not clearly erroneous if they are supported by substantial evidence." *Id.* (footnote omitted).

First, the Rummage family argues that the circuit court was required to determine the "primary purpose" of the condemnation. Similarly, Iola argues

-9-

that the circuit court erred in refusing to determine whether the asserted public benefit of the pipeline was a pretext and also argues that we should apply a "primary purpose" standard. Both the Rummage family and Iola argue that *God's Center Foundation* supports their positions.

However, our review shows that *God's Center* does not mention a "primary purpose" or "pretext" standard. *God's Center* addresses eminent domain in the context of a city government exercising eminent domain over a building "for use as an African-American cultural center[.]" *Id.* at 298. There, although God's Center alleged "LFUC's predominant intent was to benefit a small group of individuals," it failed to produce anything beyond speculation in support of its position. *Id.* at 301-02. This Court held the "valid 'public use' that would benefit both the public at large and the African American community in particular" and affirmed the city's right to condemn. *Id.* at 301.

KRS 416.675(1) dictates that eminent domain authority must only be exercised "to effectuate a public use of the condemned property." Pertinent to this appeal, the definition of "public use" includes: "(d) The use of the property for the creation or operation of public utilities or common carriers; or (e) Other use of the property expressly authorized by statute." KRS 416.675(2). There is no question that LG&E is a public utility. *City of Bardstown v. Louisville Gas & Elec. Co.*, 383 S.W.2d 918, 920 (Ky. 1964). Additionally, LG&E is a common carrier under

KRS 278.470: "Every company receiving, transporting, or delivering a supply of oil or natural gas for public consumption is declared to be a common carrier, and the receipt, transportation, and delivery of natural gas into, through and from a pipeline operated by any such company is declared to be a public use." KRS 278.470.

Additionally, KRS 278.502 provides LG&E express authority to condemn property for natural gas pipelines under the Eminent Domain Act of Kentucky:

> Any corporation or partnership organized for the purpose of, and any individual engaged in or proposing to engage in, constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, in public service may, if it is unable to contract or agree with the owner after a good faith effort to do so, condemn the lands and material or the use and occupation of the lands that are necessary for constructing, maintaining, drilling, utilizing, and operating pipelines, underground oil or gas storage fields, and wells giving access thereto and all necessary machinery, equipment, pumping stations, appliances, and fixtures, including tanks and telephone lines, and other communication facilities, for use in connection therewith, and the necessary rights of ingress and egress to construct, examine, alter, repair, maintain, operate, or remove such pipelines or underground gas storage fields, to drill new wells and utilize existing wells in connection therewith, and remove pipe, casing, equipment, and other facilities relating to such underground storage fields and access wells. The proceedings for condemnation shall be as provided in the Eminent Domain Act of Kentucky.

The circuit court found that although Jim Beam "stands to benefit greatly from this pipeline project," it also "would undoubtedly serve the broader public." R. at 671 (19-CI-00752). The Rummage family and Iola indeed presented evidence that the primary purpose of the pipeline, at least initially, would be "to supply Jim Beam more natural gas for its facilities in Clermont and Boston." R. at 1064 (19-CI-00750). They presented evidence that "Jim Beam would account for one-hundred percent (100%) of natural gas load growth provided by this new pipeline for the first two years and roughly ninety-five percent (95%) in the following three years." R. at 1064-65.

However, the circuit court also found LG&E's "natural gas pipeline system in Bullitt County already presents reliability issues for current customers. An additional line is needed to improve reliability issues for current customers," and LG&E has had to deny hundreds of new service requests due to lack of capacity. R. at 1065. The circuit court noted that the Rummage family and Iola failed to present contrary evidence. Thus, the circuit court found "there is significant proof that [LG&E's] pipeline project will improve and expand natural gas service for current and future customers in Bullitt County. Therefore, the [c]ourt finds [LG&E's] condemnation of [the Rummage family's and Iola's] land would effectuate public use." R. at 1066.

-12-

We agree. This Court has held that KRS 278.502 "expressly grants LG&E the right to condemn property to construct the pipeline at issue because, as a public carrier, it is providing a public service." *Diebold v. Louisville Gas and Electric Company*, No. 2019-CA-000393-MR, 2020 WL 113936, at *2 (Ky. App. Jan. 10, 2020). Though *Diebold* is an unpublished opinion, the statute's plain language is clear. Kentucky law does not define how many people or entities must primarily benefit from a pipeline for it to constitute a public use. Even though the circuit court found the primary purpose of the pipeline was to provide natural gas to Jim Beam's facilities, no Kentucky case law or statute provides that a primary benefit to one entity does not qualify as public use. As noted by the circuit court, the law does not require the identification of a primary purpose. Additionally, the Bullitt County community will still benefit from expanded capacity over time. Thus, the circuit court correctly found that LG&E could exercise its power of eminent domain to build the pipeline.

Second, the Rummage family argues that LG&E abused its discretion in determining the pipeline route and fraudulently concealed information from the public in selecting the proposed route. We review this argument under the following standard:

> Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken. *God's Ctr. Found., Inc. v. Lexington Fayette Urban Cty. Gov't*, 125 S.W.3d 295,

299 (Ky. App. 2002). The Courts will not interfere with a decision to condemn unless "there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power."

*Kuchle Realty Company, LLC v. Commonwealth*, 571 S.W.3d 95, 99 (Ky. App. 2018). The Rummage family and Iola bore the burden of presenting "positive proof of fraud, collusion or a clear abuse of discretion." *Pike Cnty. Bd. of Ed. v. Ford*, 279 S.W.2d 245, 248 (Ky. 1955). On appeal, we review the circuit court's "determination under a clearly erroneous standard and will uphold its ruling if supported by substantial evidence." *Kuchle Realty*, 571 S.W.3d at 99 (citing *Clark v. Bd. of Regents of W. Ky. Univ.*, 311 S.W.3d 726, 731 (Ky. App. 2010)).

The circuit court determined that the Rummage family and Iola failed to provide positive proof that LG&E abused its discretion in selecting the pipeline route. The circuit court found LG&E "has broad discretion to choose a fitting route for its pipeline, and the [c]ourt finds that [LG&E] has proved this route is appropriate and necessary to satisfy a public need to increase capacity and improve reliability for commercial and residential natural gas customers in Bullitt County." R. at 1068.

On appeal, the Rummage family takes issue with the fact that LG&E did not file a formal application for a CPCN and failed to provide themselves and the public with notice of the plan of the pipeline or application. As noted by the

-14-

circuit court, these issues regarding the notice were addressed in *Iola Capital v. Public Service Commission of Kentucky*, 659 S.W.3d 563 (Ky. App. 2022), which the Rummage family fails to mention in their brief. The Rummage family complains the route was filed under seal, denying them the ability to object to the confidentiality, but "[m]atters submitted to the Commission may be requested to be kept confidential pursuant to 807 KAR[2] 5:001 Section 13 if they qualify for confidentiality under KRS 61.878. To avoid land speculation, the route where easements will be sought is often made confidential as it was here." *Id.* at 570-71. This Court held "it was not unlawful or arbitrary for the Commission to issue a CPCN pursuant to KRS 278.020(1)(a), without requiring LG&E to first file a separate CPCN application." *Id.* at 572. Furthermore, this Court held "no notice, whatsoever, was due to either of the appellants." *Id.*

In *Iola v. PSC*, this Court stated the Rummage family's "claims of impropriety on the part of LG&E and the Commission, including those of coordinated intentional concealment, have not been precluded by our decision and are properly left for consideration within the condemnation proceedings." *Id.* at 578. Here, although this issue is properly before us, the Rummage family failed to present any positive proof of fraudulent concealment or abuse of discretion in LG&E's selection of the route. Instead, they reassert their argument that LG&E

---

[2] Kentucky Administrative Regulations.

did not file a formal application for a CPCN. Merely alleging coordinated intentional concealment without positive proof beyond the facts presented in *Iola PSC*, in which the CPCN authorization was upheld, is insufficient for a finding of fraudulent concealment or abuse of discretion. Thus, the circuit court's finding that LG&E did not abuse its discretion or fraudulently conceal the proposed route was supported by substantial evidence.

Finally, the Rummage family argues that LG&E failed to act in good faith in negotiating a settlement. KRS 416.550 provides:

> Whenever any condemnor cannot, by agreement with the owner thereof, acquire the property right, privileges or easements needed for any of the uses or purposes for which the condemnor is authorized by law, to exercise its right of eminent domain, the condemnor may condemn such property, property rights, privileges or easements pursuant to the provisions of KRS 416.550 to 416.670. It is not a prerequisite to an action to attempt to agree with an owner who is unknown or who, after reasonable effort, cannot be found within the state or with an owner who is under a disability.

"Kentucky courts have also imposed a duty on the condemnor to negotiate in good faith the acquisition of the property prior to seeking condemnation." *God's Center*, 125 S.W.3d at 300. However, "the condemner is not required to haggle in order to satisfy its obligation to negotiate in good faith the purchase of property[.]" *Id.* at 304 (citation omitted). In *Coke v. Commonwealth Department of Finance*, 502 S.W.2d 57 (Ky. 1973), the Court held:

The judge found that there was an offer which the landowners rejected. The evidence showed that efforts to buy the property were made over a substantial period of time, that the state made a legitimate offer, and the landowners flatly rejected it. The evidence further showed that the landowners had stated on several occasions that they would sell the house alone but would never sell the lot on which the house stood. The trial judge found that the owners had 'indicated that the property was not for sale in fee.' It is our opinion that there was a good faith effort 'to agree with the owner * * * on a price,' which is what the statute, KRS 56.463(5), requires.

The circuit court found LG&E "presented ample proof of negotiations with each Defendant. [LG&E] made numerous legitimate offers over a substantial period of time." R. at 1062. The circuit court made findings regarding the negotiations in each circuit case before it. First, in 19-CI-00752, 19-CI-00753, 19-CI-00754, and 19-CI-00758, LG&E's "offers ranged from roughly $3,000 to nearly $14,000. . . . The Defendants in these cases made counter offers of $250,000 in each case, and $3 million for all tracts sought." *Id.* Second, in 19-CI-00756, LG&E "made offers in November 2018, December 2018, and July 2019. . . . No counteroffer was made." *Id.* Third, in 19-CI-00750, LG&E "made offers on February 2019 and June 2019. . . . No counteroffer was made." *Id.* Finally, in 19-CI-00755, LG&E "made offers in October 2018 and July 2019. . . . The highest offer was $40,000 for the easements sought." *Id.* Though LG&E stated it never received a counteroffer, the "Defendants made a counteroffer of $12

-17-

million for the entire property." R. at 1062-63. The circuit court found the evidence proves "LG&E complied with its obligation to conduct good faith negotiations, as required by law, prior to filing these condemnation proceedings." R. at 1063.

The Rummage family again complains LG&E negotiated in bad faith by concealing the route from the public, telling residents farm taps could be granted to those who gave LG&E an easement when it could not, and failing to inform them that once the line was laid, they could no longer drive farm equipment over it. They cite no law in support of this argument and do not contest the circuit court's factual findings regarding the actual negotiation over the value of the easements.

As noted by the circuit court, the "good faith negotiation requirement required little more than [LG&E's] attempt to secure the land for a necessary sum." R. at 1059. Though we sympathize with the Rummage family, LG&E complied with the legal requirements for good faith negotiations prior to filing the condemnation action. Thus, the circuit court did not err in finding LG&E negotiated in good faith.

For the foregoing reasons, we affirm the judgment of the Bullitt Circuit Court.

ALL CONCUR.

-18-

BRIEF FOR APPELLANTS
MARILYN RUMMAGE
MUERDTER; ANTHONY TANNER
STIVERS; DAVID RUMMAGE;
JESSIE STIVERS; KIMBERLY
RUMMAGE; MARY F. RUMMAGE;
PEGGY A. RUMMAGE; AND
TERRY J. RUMMAGE:

Thomas E. Clay
Louisville, Kentucky

BRIEFS FOR APPELLANTS
IOLA CAPITAL, LLC; MARK E.
CARTER; MONICA LYNNE
CARTER; AND PAMELA
QUARTERLY:

John D. Cox
Petersen S. Thomas
Louisville, Kentucky

BRIEFS FOR APPELLEE
LOUISVILLE GAS AND ELECTRIC
COMPANY:

Monica H. Braun
Steven B. Loy
Mary Ellen Wimberly
Lexington, Kentucky