**Randall Bennett CLARK; Sally C. Tapscott; John Tapscott; Keith Branson Clark; Kristia Clark; Susan Dobrusin; Rob Dobrusin; Jean Clark Houghton; Dan Houghton; Howard Brown Clark, Jr.; and Tami Clark, Appellants,**

v.

**BOARD OF REGENTS OF WESTERN KENTUCKY UNIVERSITY, Appellee.**

**No. 2008–CA–000599–MR.**

Court of Appeals of Kentucky.

Feb. 12, 2010.

Discretionary Review Denied by Supreme Court June 9, 2010.

---

1. Criminal Action No. 6: 09–16–S–DCR.

David F. Broderick, Christopher T. Davenport, Bowling Green, KY, for appellants.

Greg N. Stivers, Scott D. Laufenberg, Bowling Green, KY, for appellee.

Before LAMBERT and VANMETER,

Judges; HENRY,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Appellants ("the Clarks") appeal from a judgment entered by the Warren Circuit Court upholding the power of the Board of Regents of Western Kentucky University ("WKU") to condemn certain property of the Clarks for the purpose of constructing an educational facility thereon to house WKU's College of Education and Behavioral Sciences ("CEBS").[2] For the following reasons, we affirm.

Prior to entering its judgment, the trial court conducted a hearing to determine whether WKU had the right to take the Clarks' property by eminent domain. The record reflects that WKU planned to construct a new CEBS building on the Clarks' property, and the other seven parcels of property WKU acquired in the same vicinity. According to WKU, the construction of a new building was necessary because Tate Hall, which currently houses the CEBS, had deteriorated beyond the point of repair. However, WKU could not simply raze Tate Hall and construct a new building on the same site because no space was available on campus to temporarily relocate the more than 200 faculty and staff who occupy Tate Hall, and the thousands of students who attend classes in the building, while construction was ongoing.

After relocating faculty, staff and students to the new CEBS building, WKU planned to use Tate Hall as "swing space" during the construction of a replacement building for Grise Hall, which currently houses WKU's College of Business. WKU then planned to raze Tate Hall so that the site could become part of the adjoining South Lawn, on which numerous campus activities take place. WKU articulated tentative future plans to expand surrounding campus buildings onto South Lawn.

With the assistance of an architectural firm, WKU researched and considered numerous sites adjacent to campus where the new CEBS building could be built. Based on factors such as location, accessibility, convenience, and construction logistics, the eastern edge of campus, where the Clarks' property was located, was found to provide the best opportunity for future campus growth. WKU successfully negotiated the purchase of seven other properties located near the Clarks, but after eleven months of negotiation, was unable to reach an agreement with the Clarks.

The Clarks' property was owned by eight members of the Clark family. During negotiations with WKU, the Clarks were represented, albeit informally, by Howard Brown (H.B.) Clark, who evidently had the power to accept, reject, and propose purchase sale agreements for the property. The first appraisal obtained by WKU assessed the fair market value of the Clarks' property at $140,000 and WKU offered to pay $150,000. This offer was rejected. The second appraisal valued the property at $152,000 and WKU offered to pay approximately $167,000. This offer was also rejected. As a final alternative, WKU offered to pay the Clarks in the form of a unitrust, whereby the Clarks would receive approximately $250,000 over fourteen and a half years. The Clarks

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. The Kentucky Supreme Court has previously upheld Clark's ability to challenge the interlocutory judgment by means of an appeal under Kentucky Rule of Civil Procedure 73.02. *Board of Regents v. Clark,* 276 S.W.3d 819 (Ky.2009).

refused this offer, and instead expressed a desire to receive either $250,000 in cash or $315,000 in the form of a unitrust, based on an appraisal they received which valued the property at approximately $300,000. In adhering to its common practice of only paying a maximum of ten percent above the appraised value of any property it attempts to acquire, WKU maintained its offer of approximately $167,000.

Since the parties could not reach an agreement, WKU filed a petition for condemnation pursuant to the Eminent Domain Act of Kentucky, KRS 416.540 *et seq.* KRS 416.550 provides, in relevant part:

> Whenever any condemnor cannot, by agreement with the owner thereof, acquire the property right, privileges or easements needed for any of the uses or purposes for which the condemnor is authorized by law, to exercise its right of eminent domain, the condemnor may condemn such property, property rights, privileges or easements pursuant to the provisions of KRS 416.550 to 416.670.

WKU's petition alleged, in part, that "condemnation is necessary to fulfill construction of a replacement building for the WKU's College of Education and Behavioral Sciences, in accordance with authorization of the Kentucky General Assembly and the WKU's Facilities Master Plan." Following the hearing on the petition, the trial court entered its findings of fact, conclusions of law, and interlocutory judgment granting WKU's petition to acquire the Clarks' property through eminent domain. This appeal followed.

We review the trial court's factual findings under a clearly erroneous standard and the legal issues de novo. *See God's Ctr. Found. Inc. v. Lexington–Fayette Urban County Gov't,* 125 S.W.3d 295, 300 (Ky.App.2002) (applying the clearly erroneous and de novo standards of review to a condemnation case in which the trial court conducted a bench trial).

> Factual findings are not clearly erroneous if they are supported by substantial evidence. Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. It is within the province of the trial court as the fact-finder to determine the credibility of the witnesses and the weight given to the evidence. Although the factors of necessity and public use associated with condemnation are ultimately legal issues, resolution of those issues encompasses factual matters subject to deferential review on appeal.

*Id.* (internal citations omitted).

▪▪▪▪ On appeal, the Clarks argue that the court's judgment was erroneous, as WKU acted in bad faith during negotiations and, as a matter of law, WKU's taking by eminent domain was unjustifiable. With respect to their bad faith claim, the Clarks stress that WKU's campus expansion onto their property was not part of its "Master Plan" so as to provide notice of future growth to property owners, that WKU's offer to purchase their property preceded the General Assembly's approval for funding of the construction project, and that WKU failed to communicate with all Clark property owners during negotiations. The Clarks further argue that the taking was unjustifiable, as the purported need for the condemned land bore an unreasonable relation to the public interest, emphasizing that future use of the former Tate Hall site as "green space" on the South Lawn was not a reasonable public necessity so as to justify the taking.

WKU maintains that it, in good faith, negotiated extensively with the Clarks during the eleven months preceding the

filing of its petition for condemnation, and provides a "negotiation timeline" documenting the parties' communications in support of its assertion. Moreover, WKU points out that H.B. Clark was the designated representative of the Clark family and that communications with him were presumably conveyed to other family members who owned the property. WKU further asserts that selection of the Clarks' property as the optimal site for the new CEBS building was not arbitrary and details the site selection process in support of its contention. While WKU concedes that authorization of the condemnation by its Board of Regents occurred subsequent to its negotiations with the Clarks, and that the expansion was not part of WKU's "Master Plan," it disputes the materiality of these issues with respect to whether the taking was an abuse of its discretion, unjustifiable, or an exercise in bad faith.

Finally, with regard to the future use of the former Tate Hall site, WKU reaffirms its plan to use the site as "swing space" during ongoing construction and to eventually integrate the site into South Lawn, onto which campus buildings may be expanded in the future. WKU avers that the taking is not for the purpose of creating "green space;" rather, the taking is necessary for the construction of a new CEBS building, although the former Tate Hall site may eventually become part of the South Lawn. WKU asserts that any uncertainty as to the future use of the former Tate Hall site beyond what is currently planned is not dispositive of the issue of whether a public necessity presently exists.

The trial court found that WKU's selection of the site for the new CEBS building was made in the best interest of WKU and its educational mission and that no evidence of bad faith or fraud in the process

utilized by WKU to identify and select the site for the project was presented. The court further found that WKU made reasonable efforts to negotiate with the Clarks for the purchase of their property prior to filing its petition for condemnation. While the court did not address the materiality of the issues concerning the timing of Board approval for funding of the project, and the project's absence in WKU's "Master Plan," nonetheless, the Clarks fail to provide any authority, as required by CR [3] 76.12, to support its contention that this action, or inaction, on behalf of WKU evinces bad faith so as to disturb the deference we afford to the court's findings on appeal. As a result, we decline to address the merits of this claim.

 As a matter of law, the court held that WKU did not act arbitrarily or in excess of its authority and that the taking was a reasonable public necessity so as to justify WKU's exercise of its eminent domain power. No dispute exists that WKU, as a public university, has the authority to condemn property through the sovereign power of eminent domain of the Commonwealth. KRS 164.410(1). The limitations on this power are the constitutionally imposed restrictions "that the taking be for 'public use' and the condemnee receive 'just compensation.'" God's Center, 125 S.W.3d at 299 (citing, in n. 9, Ky. Const. §§ 13, 242; The Eminent Domain Act, KRS 416.540–680; V.T.C. Lines, Inc. v. City of Harlan, 313 S.W.2d 573 (Ky.1957); Barker v. Lannert, 310 Ky. 843, 222 S.W.2d 659, 663 (1949)). Furthermore:

> The taking of private property for a non-public use may also offend due process and the prohibition on the arbitrary exercise of power in Section 2 of the Kentucky Constitution. Generally, the condemning body has broad discretion in exercising its eminent domain authority

---

3. Kentucky Rules of Civil Procedure.

including the amount of land to be taken. A determination by the condemnor that the taking is a necessity is ordinarily conclusive, but the courts will review the condemning body's exercise of discretion for arbitrariness or action in excess of its authority. The condemnor's decision on the amount of land to be condemned will be disturbed only if it is unreasonable in relation to the public interest or welfare involved and the condemnor may consider the future, as well as the present, needs for the taking. Kentucky courts have also imposed a duty on the condemnor to negotiate in good faith the acquisition of the property prior to seeking condemnation.

*God's Center,* 125 S.W.3d at 299–300 (citations omitted).

■ Finally, "[t]he party challenging the condemnation ... bears the burden of establishing the lack of necessity or public use and abuse of discretion." *Id.* at 300. In the present case, the Clarks have failed to meet their burden. Thus, we conclude that the factual findings made by the court in support of its rulings were supported by substantial evidence and the court did not err in concluding that WKU did not act arbitrarily or in excess of its authority in seeking condemnation.

The judgment of the Warren Circuit Court is affirmed.

ALL CONCUR.