RENDERED:  DECEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1361-MR

JAMES P. BOWLING AND
DINAH LYNN BOWLING                                    APPELLANTS


APPEAL FROM KNOTT CIRCUIT COURT
v.        HONORABLE EDDY COLEMAN, SPECIAL JUDGE
ACTION NO. 23-CI-00240


COMMONWEALTH OF KENTUCKY,
TRANSPORTATION CABINET,
DEPARTMENT OF HIGHWAYS;
H.W. LOCHNER, INC.; AND LORI
HOGG                                                         APPELLEES


OPINION
AFFIRMING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND McNEILL, JUDGES.

EASTON, JUDGE:  This is an Eminent Domain case.  Appellants challenge a

Knott County Circuit Court decision granting the right to take a small portion of

Appellants' land as part of a project to rebuild a highway bridge.  After review of

the record and the applicable law, we affirm the right-to-take decision.  We also

affirm the dismissal of the counterclaim and the dismissal of parties the Appellants attempted to add to the suit by cross-claims.  The case is remanded for the jury trial on the valuation of the property taken.

## NON-COMPLIANCE OF BRIEFS FILED

The Kentucky Rules of Appellate Procedure (RAP) continue the requirements of its predecessor rules in many ways.  The law has long required, and still requires, appellants to give a summary of the factual and procedural history of the case with "*ample* references to the specific location in the record supporting *each* of the statements" made.  RAP 32(A)(3) (emphasis added).  The written record is referred to by "TR" with page number.  RAP 31(E)(3).  The video record is referred to as "VR" with at least the beginning time.  RAP 31(E)(4).

The Appellants' brief contains a number of references to the record, although none of them are in the proper format under the RAP.  Appellees must make ample references to the record just as appellants are required to do.  RAP 32(B)(3).  The brief of Appellees, H. W. Lochner, Inc., and Lori Hogg, contains not one reference to the record.

Appellants are also required to state with each argument made where and how in the record that argument was preserved by proper presentation to the trial court.  RAP 32(A)(4).  Neither the initial brief nor the Reply brief filed by Bowling contain a single statement of preservation.  Preservation may be achieved

simply through written responses to dispositive motions. The ease of preservation does not excuse the duty to make the required preservation statements in the briefs.

These rules serve an important purpose. The public should be informed that we are slowed down when we conscientiously scour a voluminous record to find those things the parties had a duty to reference but failed to do so. We often do this so as not to penalize the parties themselves for the failures of their attorneys and are not penalizing any party in this case.

We have no duty to parse through a record of perhaps dozens of volumes to find things. The exercise of the duty of the parties to make proper references to preservation and the location of relevant contents of the record prevents waste of time from this Court wading through and assessing often immaterial contents. *See Gasaway v. Commonwealth*, 671 S.W.3d 298, 310-14 (Ky. 2023).

The problem with non-compliant briefs continues despite our advocacy against the practice. We have decided to approach the briefing non-compliance in this case as a step in a graduated approach to non-compliance. We may issue show cause orders for imposition of fines on attorneys. This Court can keep track of attorneys who repeatedly fail to follow rules. If non-compliance continues in future cases, then the next time, briefs may be stricken, issues precluded, sanctions imposed, or cases dismissed. RAP 10(B).

## FACTUAL AND PROCEDURAL HISTORY

Pursuant to Kentucky's Eminent Domain Act,[1] the Kentucky Transportation Cabinet, Department of Highways (KYTC), sought the right to take a 1725.8400 sq. ft.[2] portion of land owned by Appellants, James and Dinah Bowling (Bowling), for purposes of reconstructing a bridge on KY 1102 over Montgomery Creek in Knott County. The KY 1102 bridge project is part of the "Bridging Kentucky" program, a state initiative designed to repair or replace bridges across the Commonwealth which present public safety concerns.[3]

On April 27, 2023, Jim Gray, Secretary of Transportation, issued Division of Right of Way Official Order No. 113240 (Order), authorizing the KY 1102 bridge construction project as a needed public highway improvement. The Order directed KYTC to "acquire right of way and utility corridor needed for this project, and to institute condemnation proceedings for acquisition of such right of way and utility corridor if necessary," same being declared for a public use and as necessary for the construction, reconstruction, and maintenance of an adequate system of highways.[4]

---

[1] Kentucky Revised Statutes (KRS) Ch. 416.

[2] This many square feet indicates an area equivalent to 42 feet by 42 feet square, although the area sought here for the bridge project is an irregular shape.

[3] VR, Luke Boyd testimony, August 26, 2024, at 1:00:10.

[4] Plaintiff's Exhibit 1.

As a result of the Order, KYTC engaged the consulting services of JMT Engineering to assess the repair needs of the bridge. The bridge sustained flood damage in 2022 and was dilapated and out of safety compliance.[5] After field site assessments and consultations with a roadway designer, environmental consultant, project manager, and structural engineer, KYTC elected to replace the bridge entirely with an in-kind structure in compliance with current safety standards.

Those standards now include the addition of a structural support wall, or "wing wall," and a guardrail. JMT Engineering reviewed the property metes and bounds, as well as the legal description of the deed for the Bowlings' land, and could not determine a clear boundary. The perimeter of the new bridge would impact the Bowlings' tract of land immediately adjacent to the bridge.[6] As a result, KYTC began the process of acquiring rights, including for easements for the Bowlings' land.

KYTC had to determine the value of the property at issue. KYTC's *Right of Way Guidance Manual* (Manual) utilizes one of two procedures for valuation: a full appraisal of the property, or a minor acquisition review (MAR).[7]

---

[5] VR, Luke Boyd testimony, August 26, 2024, at 12:58:30.

[6] *Id*. at 1:16:00.

[7] VR, Joe Tackett testimony, August 26, 2024, at 10:19:35.

Appraisals involve assessment of difference in fair market value for a more substantial and complex taking. They are expensive and time-consuming. MAR reviews, on the other hand, are a pure square foot calculation based on comparables in the area, and are used to expedite projects involving public safety.

Because it is not feasible to do appraisals on all properties needed to repair bridges, KYTC uses a MAR review for any acquisition involving non-complex property valued under $10,000.00.[8] MARs are handled by an acquisition agent, who acts as a "middleman" in the acquisition process to ensure fairness to both the Commonwealth and the landowner. KYTC determined the acquisition property for the KY 1102 bridge project qualified for valuation under an MAR review.

Next, KYTC retained the services of H.W. Lochner, Inc. (Lochner), to facilitate purchase of the rights of way (ROW) on this project. Lochner's employee, Lori Hogg (Hogg), was assigned as the ROW specialist. Using the MAR valuation process, the tract at issue was valued at $69.03. This value was calculated by factoring the square footage to be acquired by its cost per acre, which cost was derived from six comparable parcels of land in the area similarly classified for agricultural use.

---

[8] VR, Joe Tackett testimony, August 26, 2024, at 10:21:25.

Hogg contacted James Bowling[9] by phone and advised him that KYTC sought to purchase an easement over his land adjacent to the bridge for construction access and future maintenance and inspection. They arranged to meet at the project site. Upon arrival, Hogg presented Bowling with the plans for the bridge reconstruction, a title report, and value range of similarly situated property. Hogg described the MAR valuation process and the resulting determination that the value of the tract was $69.03. She further explained that, because KYTC has a policy of offering landowners no less than $500.00 to acquire necessary easements for highway construction,[10] KYTC's offer to purchase the easement was $500.00. Bowling rejected this offer and communication between the parties began to deteriorate.

The Bowlings argue that, at this point in time, KYTC failed to negotiate with them any further. KYTC maintains the Bowlings made an unreasonable counter-offer to sell or donate[11] the tract in exchange for the construction of a $35,000 driveway for their property. Bowling wanted to be able to develop this presently agricultural land commercially. Considering such work

---

[9] Although Dinah Bowling has a marital interest in the subject property, all communications between the parties appear to have been with James Bowling alone.

[10] VR, Lori Hogg testimony, August 26, 2024, at 1:55:11.

[11] A gift with a price tag is not a gift. An assertion of "giving" land if a $35,000 private road is built is not a gift or donation.

as outside the scope of the project, KYTC rejected the counteroffer. Hogg told Bowling that he could tender another counteroffer if he believed there were issues KYTC did not take into consideration in its original valuation. The parties were ultimately unable to reach an agreement, which resulted in this litigation.

On December 18, 2023, KYTC filed an Eminent Domain petition pursuant to KRS 416.540, 416.670, and 177.081, against the Bowlings and others,[12] not subject to this appeal. KYTC sought to condemn its needed easement, and acquire in fee simple that portion of the Bowlings' land adjacent to the KY 1102 bridge. The Report of Commissioners determined the difference between the fair market value of the property before and after the taking was $10.00.

The Bowlings filed a motion to dismiss the Petition for failure to state a claim, or in the alternative, a motion to file a late answer. The circuit court overruled the motion to dismiss. The Bowlings then filed their Answer and asserted counterclaims against KYTC and cross-claims against Lochner and Hogg. The basis of these claims was that KYTC, Lochner, and Hogg failed to engage in good faith negotiations prior to initiating the condemnation suit, and someone had since trespassed with heavy equipment on their property, causing damage. The Bowlings also allege the area subject to taking is the only means of access to their

---

[12] This action also includes two other defendants not subject of this appeal: James Wetmore and American Tax Help Service, whose interests in the real property related to recorded Certificates of Delinquency.

40-acre tract. The Bowlings' argument continues that, since KYTC failed to negotiate in good faith, they are not entitled to condemnation.

KYTC filed a motion to dismiss the counterclaim and to set an immediate right-to-take trial, also arguing that neither Lochner nor Hogg are proper parties to this action. KYTC points out that this is a special proceeding under the Kentucky Eminent Domain Act, which does not allow a property owner to assert a counterclaim against KYTC.

Lochner and Hogg filed a motion to dismiss the cross-claim by special appearance, joining KYTC's motion to dismiss, and also arguing that, if the court determines they are in fact parties to the action, they are entitled to dismissal as disclosed agents of the state.

The right-to-take trial was ultimately set for August 26, 2024. The Bowlings filed a motion to continue this date as they had not completed their discovery. The circuit court denied the motion by order entered August 23, 2024, and proceeded with the bench trial three days later. At trial, the circuit court heard testimony from Joe Tackett, KYTC roadway supervisor; Luke Boyd, highway design engineer for JMT Engineering; Lori Hogg, ROW specialist for Lochner; and James Bowling.[13]

---

[13] James Bowling testified as the landowner, but he is also a licensed attorney and represents himself and his wife, Dinah, in these proceedings.

The circuit court received into evidence, without objection, as Plaintiff's Ex. 1, the prior KYTC Order. The circuit court determined that, pursuant to KRS 177.081, this Order is conclusive evidence of public use of the condemned property. The circuit court also concluded that the Bowlings failed to overcome KYTC's proper exercise of Eminent Domain because they did not establish fraud, bad faith, or abuse of discretion by KYTC in the selection of the property to be taken.

The circuit court acknowledged that there was a dispute as to the value of the property being condemned but held that the use of the MAR to assess value also did not constitute fraud, bad faith, or abuse. The circuit court determined the compensation factors listed in KRS 416.660 apply only when an agreement with the landowner is not reached, and KYTC files an action for condemnation. Prior to such proceedings, KRS 177.070 allows KYTC to negotiate according to any otherwise permissible manner of valuation.

The circuit court also rejected the Bowlings' argument that KYTC was not entitled to condemnation because they failed to negotiate with them, relying on the reasoning of *Coke v. Commonwealth Department of Finance*, 502 S.W.2d 57, 59 (Ky. 1973), that the Commonwealth is not required to haggle. The circuit court concluded that final valuation was part of the right-to-take trial, and held that the value would be determined at a later jury trial on exceptions to the

-10-

interlocutory order. KRS 416.620. The circuit court ruled that KYTC was entitled to condemn pursuant to KRS 416.540 and KRS 177.081, and made its order entered September 9, 2024, final and appealable per *Hagg v. Kentucky Utilities Co.*, 660 S.W.2d 680 (Ky. App. 1983). After another hearing on October 25, 2024, the circuit court denied the Bowlings' motion to alter, amend or vacate its right-to-take order, and this appeal[14] followed.

The Bowlings challenge the circuit court's orders granting the motions to dismiss counterclaims against KYTC and cross-claims against Lochner and Hogg, denying their motion to continue the expedited right-to-take trial, and granting KYTC the right to take their property.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint." So, a court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . ." Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*.

---

[14] An interlocutory order on the condemner's right to take is immediately appealable. *Ratliff v. Fiscal Court of Caldwell Cnty., Kentucky*, 617 S.W.2d 36, 39 (Ky. 1981).

-11-

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks and citations omitted).

The authority to condemn is subject to the constitutional restrictions that the taking be for "public use" and that the condemnee receive just compensation. *See* KY. CONST. § 13. "Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken." *God's Ctr. Found., Inc. v. Lexington Fayette Urban Cnty. Gov't*, 125 S.W.3d 295, 299 (Ky. App. 2002). The Courts will not interfere with a decision to condemn unless "there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power." *Commonwealth Dep't of Highways v. Vandertoll*, 388 S.W.2d 358, 360 (Ky. 1964).

"[W]hen the department of highways by [official] order determines that an acquisition is necessary a condemnee, in order to defeat such an acquisition, has the burden of proving fraud, bad faith, or abuse of discretion." *Id.* at 359. This Court reviews a lower court's determination of such factual questions, including any bad faith in the negotiation process, under a clearly erroneous standard and will uphold its ruling if supported by substantial evidence. *Clark v. Bd. of Regents of W. Ky. Univ.*, 311 S.W.3d 726, 731 (Ky. App. 2010). A trial court's decision to grant or deny a request for a continuance is also reviewed under the abuse of

discretion standard. *Slone v. Commonwealth*, 382 S.W.3d 851, 856 (Ky. 2012) (citations omitted).

## ANALYSIS

I.    **The circuit court did not err in dismissing the counterclaims against KYTC**.

The Bowlings filed counterclaims against KYTC for inverse condemnation and trespass. The Bowlings allege that, at some point, KYTC, either themselves or pursuant to their directive, bulldozed on their property and installed a fire hydrant in the middle of a property access point pursuant to the bridge plans. The circuit court dismissed the counterclaims. The Bowlings challenge this decision, arguing the Kentucky Rules of Civil Procedure (CR) allow such counterclaims.[15] KYTC responds with a motion to strike any reference to the alleged trespass or other such alleged damage as beyond the scope of a condemnation action. KYTC is correct given the circumstances presented here.

CR 1(2) provides:

These Rules govern procedure and practice in all actions of a civil nature in the Court of Justice *except for special statutory proceedings*, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules . . . .

(Emphasis added.)

---

[15] CR 13.01 and CR 13.02.

Title XXXVII Special Proceedings, Ch. 416 Eminent Domain,

provides:

> If the owner has filed answer or pleading putting in issue
> the right of the petitioner to condemn the property or use
> and occupation thereof sought to be condemned, the
> court shall, without intervention of jury, proceed
> forthwith to hear and determine whether or not the
> petitioner has such right.[16]

KYTC filed this special proceeding under the Kentucky Eminent Domain Act, KRS 416.540 *et. seq.* Therefore, the statutory provisions of the Act control.

While KRS 416.610(4) provides the landowner the opportunity to respond to a condemnation petition, it confines the landowner's answer or pleading to the "right to take" issue. Objections to the amount of compensation due are preserved by the filing of "exceptions,"[17] but counterclaims are not specifically authorized by the Act.[18]

In this case, the KYTC has the right to take. We do not know who proceeded to make any changes to the Bowlings' property. For all we know at this point, a water utility proceeded to do so. Regardless, the Bowlings are not without

---

[16] KRS 416.610(4).

[17] KRS 416.610(3).

[18] We acknowledge *Bianchi v. City of Harlan*, 274 S.W.3d 368 (Ky. 2008), in which a counterclaim for a "reverse" condemnation was discussed. As the Court in *Bianchi* explained, the inverse condemnation counterclaim was not actually a claim of taking additional property but rather a claim for additional compensation for property impacted. The decision in *Bianchi* focused on the application of the "unity rule" in the case of partial taking of a property.

-14-

recourse. They are entitled to and will receive just compensation for any portion of their property taken in this proceeding.

"Inverse condemnation is the term applied to a suit against a government to recover the fair market value of property which has in effect been taken and appropriated by the activities of the government *when no eminent domain proceedings are used.*" *Commonwealth, Natural Resources and Environmental Protection Cabinet v. Stearns Coal and Lumber Co.*, 678 S.W.2d 378, 381 (Ky. 1984) (emphasis added). Here, condemnation proceedings for the Bowlings' tract of land have already been initiated. It was not necessary to make any counterclaim of *inverse* condemnation.

The Bowlings also claimed a tresspass had occurred. While actions for civil damages for trespass are outside the scope of condemnation proceedings, the Bowlings are free to bring such claims against KYTC, assuming that the Bowlings can actually prove that KYTC was involved in the activity, in the Board of Claims. Section 231 of the Kentucky Constitution provides that the General Assembly may direct in what court suits may be brought against the Commonwealth. The General Assembly made such direction when it enacted KRS 49.060, which provides:

> The Board of Claims shall have exclusive jurisdiction to hear claims for damages, except as otherwise specifically set forth by statute, against the Commonwealth, its cabinets, departments, bureaus, or agencies, or any of its

-15-

officers, agents, or employees while acting within the scope of their employment.

While KYTC can be sued in the Board of Claims pursuant to the limited waiver of sovereign immunity set forth in KY. CONST. § 231, and the Board of Claims Act, KRS Ch. 49, the Bowlings' counterclaim for civil damages for trespass are outside the scope of this special statutory condemnation proceeding. Dismissal of the counterclaims against KYTC was proper.

## II. The circuit court did not err in dismissing the attempted cross-claims against Lochner and Hogg.

KYTC filed the Eminent Domain petition against the Bowlings. Neither Lochner nor Hogg were included as parties to the action. They have no ownership interest in the property at issue and will perform no work on the bridge. Their sole involvement stems from their role as an agent of the Commonwealth retained to present KYTC's offer to purchase a ROW over the Bowlings' small strip of land adjacent to the bridge.

With their Answer, the Bowlings asserted cross-claims against Lochner and Hogg related to their involvement in the easement negotiation process and their hypothetical involvement in the later alleged trespass by an unidentified party. Lochner and Hogg filed a motion to dismiss the cross-claims on two grounds: failure to seek leave to add them as parties to the action, and protection

-16-

under the agency doctrine.  The cross-claims were properly dismissed on both grounds.

CR 13.07 provides in substance that a cross-claim may be asserted against a co-party for claims arising out of the transaction or occurrence that is the subject matter of either the original action or of a counterclaim.  *Bickel-Gibson Assocs. Architects, Inc. v. Ins. Co. of N. Am.*, 774 S.W.2d 469 (Ky. App. 1989).  CR 14.01 provides that "[a] defendant may move for leave as a third-party plaintiff to assert a claim against a *person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him*" (emphasis added).  Neither of these rules apply.

What the Bowlings attempted to do here was to add defendants to their counterclaim.  This may be permitted by CR 13.08.  But this requires an order of the court on motion to permit the addition of the parties.  The Bowlings simply asserted cross-claims against these non-parties without the circuit court's permission.

KYTC and Lochner and Hogg (by special appearance) each filed motions to dismiss the cross-claims on procedural grounds.  While the Bowlings filed a response to the motions to dismiss, they never sought leave to add Lochner and Hogg as parties, specifically additional counterclaim defendants.

The circuit court heard argument on the motions and determined that Lochner and Hogg were not then parties and would therefore not be obligated to participate in the August 26th right-to-take bench trial. Neither immediately thereafter, nor at any other time since, did the Bowlings ever seek leave to properly join Lochner and Hogg as parties to the action.

The Bowlings might be tempted to further bog down this simple matter of proper compensation by revisiting their process against Lochner and Hogg. To avoid further needless delay and expense to all concerned, we conclude that Lochner and Hogg are correct in their defense that they are disclosed agents of the Commonwealth and not liable for any supposed failure of the Commonwealth to negotiate sufficiently. Lochner and Hogg gave notice to the Bowlings that they were only acting on behalf of the KYTC as ROW agent. There is no indication they held themselves out as anything other than ROW agent. There was also nothing but speculation that they somehow caused a trespass. Even if they had, again, they were agents for the Commonwealth and any remedy for trespass should be with the Board of Claims.

As long as the third party has notice that the agent is acting on behalf of a principal, "the agent is not liable, generally speaking, for his own authorized acts, or for the subsequent dealings between the third person and the principal." *Pannell v. Shannon*, 425 S.W.3d 58, 65 (Ky. 2014). A principal is disclosed if "at

-18-

the time of a transaction conducted by the agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity." *Potter v. Chaney*, 290 S.W.2d 44, 46 (Ky. 1956) (citations omitted).

Lochner and Hogg, as undisputed disclosed agents acting on behalf of KYTC, are not themselves liable if the Commonwealth caused a trespass or otherwise fails to establish its right to take.

**III.    The circuit court did not abuse its discretion in denying the motion to continue the expedited right-to-take trial**.

With respect to the denial of a continuance, our standard of review is whether the circuit court abused its discretion. *Deleo v. Deleo*, 533 S.W.3d 211 (Ky. App. 2017). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999) (citations omitted).

The Bowlings argue the denial of their motion to continue was arbitrary, because they did not have adequate time to complete discovery. KYTC did not comply with discovery demands until the day before trial, and the Bowlings argue there was not enough time to review the material. Responses by

Lochner and Hogg were never returned, and they refused to comply with a subpoena because it had not been properly served on an out-of-state entity.[19]

In response, KYTC argues a continuance was improper because KRS 416.610(4) is a special statutory proceeding designed to expedite the judicial process so that roadway projects, which are subject to state and federal budget timelines, are not unnecessarily delayed solely by litigating the Commonwealth's right to exercise Eminent Domain.

The Petition in this case was filed on December 18, 2023. The Bowlings were each served summonses on the Petition by certified mail on January 24, 2024. On February 9, 2024, they filed a motion to dismiss the Petition, which the circuit court denied. The Bowlings then filed an Answer with their accompanying counterclaim and cross-claims on April 25, 2024. On May 7, 2024, KYTC filed a motion to dismiss the counterclaim and motion to set immediate right-to-take trial, which was scheduled for hearing May 23, 2024.

The Bowlings filed a motion to continue the trial scheduled for May due to some "previous engagement." The hearing was continued to July 11, 2024, by Agreed Order. However, on July 11, 2024, the Chief Administrative Judge of the Mountain Region of Judicial Circuits issued an Order Certifying Need for

---

[19] H.W. Lochner, Inc., was not obligated to answer the subpoena due to invalid service on an individual not authorized to receive service on behalf of the company. TR at 138-45.

Special Judge Assignment, and four days later a Special Judge was assigned to the case. The matter was then rescheduled for hearing on August 2, 2024, at which time the Bowlings raised the issue of discovery for the first time, over two months after the initial trial date. KYTC offered on the record to expedite discovery by waiving any time limits and clearing calendars to make witnesses available for depositions. The circuit court denied the motion to continue and set the matter for evidentiary hearing on August 26, 2024.

It is unclear why Bowling, as counsel for himself and his wife, waited nearly seven months after service to begin the discovery process. He did not proffer requests for discovery until August 13, 2024, two weeks before the right-to-take trial. Then, ten (10) days later, he requested a continuance of the trial for lack of discovery responses. The record indicates that KYTC electronically filed notice of discovery responses on August 23, 2024, along with a response opposing continuance of the August 26th hearing. KYTC explained the parties had been engaged in settlement negotiations for two weeks, and that the Bowlings' discovery requests were excessive and burdensome. Despite that, KYTC was still able to tender discovery responses prior to the bench trial.

A party "cannot complain of the lack of a complete factual record when it can be shown that the respondent has had an adequate opportunity to undertake discovery." *Cargill v. Greater Salem Baptist Church*, 215 S.W.3d 63,

69 (Ky. App. 2006). "It is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628, 630 (Ky. App. 1979) (six months between filing of complaint and granting motion for summary judgment was sufficient opportunity to complete discovery).

Here, the Bowlings failed to undertake discovery until the eve of trial, nearly seven months after their initial appearance in the case. They had adequate time to complete discovery on the limited issues presented in an Eminent Domain case as to the right to take, and their failure to do so does not support their second continuance request. The bench trial was to determine only the limited question of the right to take as part of a special statutory proceeding which mandates judicial determination of such cases on an expedited basis. If the property owner puts in issue the right to take, "the trial court must immediately determine the matter." *Ratliff v. Fiscal Ct. of Caldwell Cnty., Kentucky*, 617 S.W.2d at 36, 38 (Ky. 1981).

Finally, the Bowlings have failed to demonstrate how they were prejudiced by the time allowed for discovery. KYTC opposed the second continuance request as unnecessary because the sole issue before the Court was KYTC's right to take the property described in the petition for the public purpose of a bridge improvement project. Most of the evidence to be offered is straight-forward, and either already a matter of public record (*e.g.*, official right of way

-22-

plans), filed in the record (*e.g.*, official order approving the project), or already known to the Defendants (*e.g.*, KYTC's communications directly with the Bowlings regarding the acquisition).

It is true that the right-to-take trial can also include evidence about the good faith of negotiations to obtain the property by agreement. But the Bowlings point to nothing to be discovered in their lately sought discovery that changed what the parties already knew. Bowling and Hogg already knew what conversations they had and what offer and counteroffers had been made. In these circumstances, the circuit court did not abuse its discretion in denying another continuance.

**IV.    The circuit court's determination that KYTC had the right to take the Bowlings' property is supported by substantial evidence**.

The Bowlings argue KYTC may not condemn their land because they failed to negotiate or make a reasonable effort to acquire the property in good faith at a reasonable price. They also argue condemnation is improper because the acquisition tract is their only means of reasonable access to the remainder of their 40-acre property, and the Commonwealth cannot leave a landowner landlocked.

The Bowlings rely heavily on the reasoning of *Usher & Gardner, Inc. v. Mayfield Independent Board of Education*, 461 S.W.2d 560 (Ky. 1970), that KYTC cannot take their property because it failed to make "a reasonable effort in good faith to acquire the land by private sale at a reasonable price." *Id.* at 562. The primary issue before the court in *Usher* concerned proper evidence before a

jury in the compensation phase of a condemnation action. Here, KYTC's condemnation case has not yet progressed to a jury valuation phase.

The court in *Usher* held that, although a school board had the right to exercise its power of Eminent Domain to acquire land, the trial court erred in determining the time of taking for valuation purposes, and in excluding evidence of comparable sales offered as evidence by the landowner. *Id.* Here, we are only concerned with the right to take. The *Usher* case is distinguishable and does not compel a conclusion that KYTC acted in bad faith in their negotiations.

KRS 177.081(1) provides authority to the Department of Highways to condemn land necessary for the construction or reconstruction of highways. This statute provides in relevant part:

> The Commonwealth of Kentucky, Department of Highways, when it has, by official order, designated the . . . bridge . . . deemed necessary for . . . reconstruction . . . may, if unable to contract or agree with the owner or owners thereof, condemn the lands or material, or the use and occupancy of the lands designated as necessary. All property acquired by the Commonwealth of Kentucky, Department of Highways, shall be in fee simple whenever so specified in the petition filed in the action. *The official order of the Department of Highways shall be conclusive of the public use of the condemned property and the condemnor's decision as to the necessity for taking the property will not be disturbed in the absence of fraud, bad faith, or abuse of discretion.*

(Emphasis added.)

-24-

Plaintiff's Ex. 1, Official Order No. 113240, serves as conclusive proof of public use of the property at issue, as well as the necessity for condemnation. However, KYTC still has a duty to negotiate with the landowner in good faith, because the "taking" of the property, even upon proof of public use, can be overcome by a showing of bad faith, fraud, or abuse of discretion in the decision to take the property, or bad faith in negotiations for a purchase price. The Bowlings failed to meet this burden.

The Bowlings do not challenge condemnation on grounds of fraud or abuse of discretion. They argue bad faith in pre-litigation negotiation. They first argue that the condemnation can be overcome because KYTC failed to negotiate in good faith by using the MAR process in determining value. We disagree.

**A.) The use of the MAR process in determining value for purposes of negotiating a private sale is not bad faith.**

The Bowlings rely on the language of KRS 416.660 for determining compensation. But the clear and unambiguous language of this statute provides it applies "[i]n all actions for the condemnation of lands under the provisions of KRS 416.550 to 416.670 . . . ."[20] At the time KYTC engaged the services of JMT Engineering and Lochner and Hogg, and assessed the value of the acquisition tract, there was no pending condemnation proceeding. Therefore, KRS 416.660 and its

---

[20] KRS 416.660(1).

compensation methodology did not *yet* apply. Whether KYTC made a good faith offer to purchase the Bowlings' property is therefore not dependent on the fair market value standard set forth in KRS 416.660. Rather, at this stage of the negotations, the parties are at liberty to reach any mutually satisfactory resolution. And KYTC's use of comparables in the area to formulate a pure square foot calculation under the MAR process was not bad faith.

While there is no Kentucky statute designating valuation procedures for private sale *before* condemnation actions are commenced, KYTC is bound by its policies and procedures and those policies and procedures *do* set forth guidance for negotiating a private sale.

The Manual[21] was approved and adopted on January 10, 2019, by Greg Thomas, Secretary, as Office of the Secretary Official Order 111448. The Manual serves as the official policy and procedure manual for the Transportation Cabinet. Since bridge projects in the Commonwealth are funded by both state and federal resources, these policies and procedures comply with both state and federal directives. Both sources provide clear guidance for negotiating a private sale without the use of a full appraisal.

---

[21] Plaintiff's Ex. 2.

49 C.F.R.[22] § 24.102 governs basic policies for real property acquisition under federal programs. This section provides for appraisal waivers. Under these federal guidelines, an appraisal is not required if the agency determines an appraisal is "unnecessary because the valuation problem is uncomplicated and has a low fair market value, and the anticipated value of the [property's] acquisition is estimated at $15,000 or less, based on a review of available data."[23] Likewise, Manual 702 provides for the use of appraisal waivers, known as MARs. This valuation and acquisition process is used when the property at issue involves "noncomplex acquisitions that cause no damage to the remaining property" and are valued at $10,000 or less.[24]

Tackett testified he has been employed as a roadway supervisor with KYTC for 27 years. He was assigned to oversee ROW acquisition on the KY 1102 bridge project. He confirmed he uses one of two types of procedures in valuing property: appraisals and MARs. The MAR process (or an "appraisal waiver") is routinely used to value small tracts of land unencumbered by structures, and is based on current sales of like properties within a range of values. He gives the

---

[22] Code of Federal Regulations.

[23] 49 C.F.R. § 24.102(2)(ii).

[24] For parcels valued between $10,000 and $25,000, there is an option for an appraisal upon request by the landowner.

landowner the benefit of the doubt and always uses the higher end of the comparables. Tackett has never ordered a full appraisal on a non-complex property valued under $10,000, like the small tract at issue in this case. He avoids excessive use of taxpayer funds to pay for unecessary appraisals, and is mindful of the need to expedite acquisitions in order to facilitate timely reconstruction of unsafe bridges.

The Division of Right of Way and Utilities encourages the districts to use MAR valuations to "reduce the workloads of appraisers and review appraisers and advance the acquisition process."[25] KYTC's use of the MAR valuation process in this case was consistent with its own policies and procedures manual, consistent with federal appraisal waiver guidelines, and does not constitute evidence of bad faith.

The Bowlings next argue that KYTC acted in bad faith sufficient to overcome condemnation by refusing to make a counteroffer to their counteroffer. We again disagree.

### B.) KYTC's failure to make a counteroffer to a counteroffer is not a failure to negotiate.

A "take it or leave it" offer is not a good faith offer. *Pike Cnty. Bd. of Educ. v. Ford*, 279 S.W.2d 245, 249 (Ky. 1955) (citing *Paducah Ice Mfg. Co. v.*

---

[25] Manual 702 is entitled: "Minor Acquisition Review."

*City of Paducah*, 289 Ky. 31, 157 S.W.2d 490, 491 (Ky. 1941)). But Kentucky's highest court in *Pike County* did find that an offer which was decidedly inadequate but left open for further negotiation did not constitute bad faith. The letter in *Pike County* wherein the offer was made contained this statement:

> If Mrs. Ford and her son feel that they can make some offer with some degree of reasonableness attached thereto, we shall be happy to receive and consider their offer.

That was not a "take it or leave it" offer, but a request for a reasonable offer in return. The *Pike County* Court was unable to conclude, as a matter of law, that there was no good faith effort to negotiate. *Id*. at 249.

Likewise in this case, KYTC offered to reconsider the proposed value if there was an error or omission in their calculation. KYTC entertained a counteroffer by the Bowlings to acquire the tract in exchange for construction of a private driveway at a cost to the Commonwealth of $35,000. KYTC rejected this counteroffer as being "outside the scope of the project," and again offered to reconsider if there was an error or value omitted from the proposal. The Bowlings tendered a second counteroffer, that the property would be acquired in exchange for KYTC installing a culvert and entrance without a lengthy drive. Again, KYTC rejected the counteroffer as being "outside the scope of the project."

The Bowlings offered no evidence as to an alternate value or evidence of any item missing from KYTC's valuation. They simply think the offer was too

low and expected KYTC to make a second offer in excess of the original $500.00 proposal. As the circuit court correctly noted, the Commonwealth is not required to haggle. KYTC's request for a reasonable offer in return, and its consideration of two separate proposals by the Bowlings, in which they sought expensive improvements for their personal benefit, is sufficient evidence to support a finding of a good faith effort by KYTC to negotiate the private sale of the land.

In addition, KYTC's policies set the scope of a right of way agent's duties: present the offer in person verbally and in writing and make reasonable efforts to help the owner decide within forty-five (45) days.[26] Hogg testified she first contacted Bowling in July of 2023. She spent several months discussing Bowling's valuation concerns with him. She took the Bowlings' counteroffers to her supervisors on two different occasions and spent twice as long on this acquisition as her other cases.

KYTC's Manual does not allow an agent to make a "counteroffer," but rather a revised offer if something was left out.[27] "Negotiation" is merely the attempt of the ROW specialist to obtain right of way by agreement,[28] and although a landowner is welcome to make a counteroffer, the ROW specialist only makes an

---

[26] Manual 702.2.

[27] Manual 804-2.

[28] Manual 801.

initial offer and, if justified, a revised offer. In light of these policies, and in consideration of efforts made by the KYTC to negotiate a private sale of the acquisition tract, there is substantial evidence to support the circuit court's finding of good faith negotiation.

The Bowlings argue that condemnation can be overcome simply because KYTC's offer to purchase was too low. We disagree.

**C.) KYTC is still entitled to condemn the acquisition tract even if the offer to purchase was "low."**

KYTC's offer to purchase was based on its own policy of calculating value according to the MAR. This method of valuation is appropriate for reasons already discussed. Hogg testified that, based on comparable sales in the area, the highest and best use of the tract was agricultural with comparable sales at $0.04 per square foot. Based on a calculation of .04/sq. ft. by 1725.85 sq. ft., the MAR valuation of the Bowlings' property was $69.03. By offering the Bowlings no less than their own self-imposed minimum of $500.00, KYTC's offer is higher than the MAR valuation of $69.03 and substantially higher than the $10.00 value determined by the commissioners in the later condemnation process. KYTC's offer was therefore sufficient to overcome the condemnation challenge. The Bowlings may very well convince a jury that they are entitled to more than $10.00, or even more than $500.00, but that is not the decision being made in the context of the right to take.

When parties are unable to negotiate the private sale of property needed to construct highways or bridges, and the case proceeds to a condemnation action under Kentucky's Eminent Domain Act, KRS 416.610(1)-(4) essentially creates a bi-furcated hearing process when there is a challenge to the condemnation petition. First, the circuit court addresses, "without intervention of jury," KRS 416.610(4), whether the petitioner has the right to take the property at issue. This determination shall be entered by interlocutory judgment if the petition is granted, or as a final judgment in the event it is denied. Second, any challenge to valuation is resolved at a separate hearing. KRS 416.610(3).

"Questions concerning compensation are decided by a statutory dispute resolution process whereby three commissioners are appointed (KRS 416.580) to determine compensation for the taking, with an appeal, by way of exceptions to the interlocutory judgment, to a jury[.]" *Commonwealth v. Cooksey*, 948 S.W.2d 122, 123 (Ky. App. 1997). Evidence and arguments related to "just compensation" are reserved for the fact finder, whereas determining the right to take property is ultimately a question of law for the court. The Bowlings' challenges to the circuit court order are really arguments over valuation to be decided after resolution of the right to take.

We considered similar arguments in *Kuchle Realty Company, LLC v. Commonwealth*, 571 S.W.3d 95 (Ky. App. 2018). There, the landowner

challenged condemnation based on a low offer and use of the MAR valuation process. The property in *Kuchle* was valued by the Transportation Cabinet appraiser utilizing an MAR. It was an uncomplicated property because there would be no damage to the appellant's building or remainder. Although the appellant argued a later appraisal was invalid because the value determined was too low, this Court found these arguments improper at the right-to-take stage of the litigation. The *Kuchle* Court clarified the appellant would have the opportunity to present evidence to a jury on the issue of value but found substantial evidence to support the circuit court's finding that the Transportation Cabinet did not engage in any conduct that would require the dismissal of its condemnation petition.

Likewise, here, KYTC's offer of $500.00 was not so unreasonably low as to overcome the right to condemn, considering the commissioner's report setting value at $10.00 and the resulting MAR value of $69.03. Dissatisfaction with the amount offered does not render the offer unreasonable.

Finally, the Bowlings argue KYTC does not have the right to take the acquisition tract because it will leave them without reasonable access to the remainder of their 40-acre tract. Again, we must disagree.

**D.) Issues regarding lack of access to the remainder of the Bowlings' 40-acre tract concern "just compensation" factual issues for a jury and not "right-to-take" issues of law for the court**.

The Bowlings' argument was specifically rejected by this Court in *Eaton Asphalt Paving Co. v. CSX Transportation, Inc.*, 8 S.W.3d 878 (Ky. App. 1999). There, the appellants argued that CSX's refusal to offer to compensate them for the loss of access to 55 acres on the east side of the tracks constituted a failure to negotiate in good faith. This court affirmed the trial court's determination that there was nothing unreasonable, unfair, or oppressive in CSX's approach to the issue so as to implicate CSX's right to file a condemnation action. CSX was not required to accept the appellants' legal arguments of the extent of its liability in order to be allowed to proceed to condemn, citing *Coke*, 502 S.W.2d 57. The trial court properly assured the appellants they would be entitled to make all arguments they wanted on the issue of access in the damages portion of the proceeding and might ultimately succeed in convincing a jury that CSX's obligation is greater than it appears from earlier valuations. *Eaton*, 8 S.W.3d at 884.

Here, there is an issue regarding whether the Bowlings will lose reasonable access to the remainder of their property if the subject tract is condemned. Tackett testified he thought the Bowlings had access to the remainder of their property via a logging road and was surprised to learn at trial that the

logging road was not on the Bowlings' property. However, Tackett also testified that he would not have changed the valuation or acquisition process because the Bowlings' access to their property would be the same with or without the easement. If the Bowlings did not have access to the entire 40 acres before the easement purchase, then it is irrelevant. Acquisition to property for bridge improvement does not mean the Commonwealth has to provide access where none currently exists.[29]

Luke Boyd testified that he thought the logging road was owned by the Bowlings and the new guardrail might block access. As a result, they changed the plans to flare out and widen the entrance to that side of the road. The guardrail was moved in the design project to accommodate access via the logging road. He also testified he was not familiar with the Bowlings' entire tract, just the acquisition tract. He could not render an opinion on access because he was not familiar with the boundaries of the Bowlings' entire 40 acres.[30]

During Hogg's testimony, she denied Bowling ever told her he did not own the logging road or that his only access to the remainder of the lot was

---

[29] VR, Joe Tackett testimony, August 26, 2024, at 10:40:10.

[30] VR, Luke Boyd testimony August 26, 2024, at 1:16:10.

through the acquisition tract.[31]  But Bowling testified he had disclosed these facts to Hogg at their initial meeting in July of 2023.

Although there is evidence that demonstrates a degree of confusion and inconsistency regarding access to the remainder of the 40-acre tract, whether by the non-ownership of the logging road or the location of the new guardrail, such evidence is insufficient to constitute bad faith so as to bar condemnation.  Rather, these are issues to be properly considered by a jury in determining compensation.

The circuit court's determination that KYTC made a good faith, reasonable effort to obtain the Bowlings' property at a reasonable price is supported by substantial evidence.  Any valuation issues regarding the Bowlings' use of the acquisition tract before and after the taking is properly left to the jury at a future hearing on exceptions to the amount of compensation awarded by the commissioners as prescribed by KRS 416.610(3).

## CONCLUSION

Finding no errors in the circuit court orders denying Appellants' motion to continue, dismissing the counterclaims and the attempted cross-claims against Lochner and Hogg, and finding substantial evidence to support the circuit court order granting KYTC's petition condemning Appellants' land, the decision

---

[31] VR, Lori Hogg testimony August 26, 2024, at 1:32:30.

of the Knott Circuit Court is AFFIRMED. The case is REMANDED for the too-long delayed jury trial on the valuation of the property taken.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

James P. Bowling
Hindman, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, TRANSPORTATION
CABINET, DEPARTMENT OF
HIGHWAYS:

Robin David Rice
John F. Estill
Maysville, Kentucky

BRIEF FOR APPELLEES H.W.
LOCHNER, INC.; AND LORI
HOGG:

Michael T. Davis
Lexington, Kentucky